UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>LAS VEGAS MONORAIL COMPANY,<br>a Nevada non-profit corporation,<br><br>Debtor. | Case No.: No. BK-S-10-10464-BAM<br>Chapter 11<br><br>USDC Case No.: 2:10-cv-00678-JCM-LRL |
| AMBAC ASSURANCE CORPORATION; and THE SEGREGATED ACCOUNT OF AMBAC ASSURANCE CORPORATION, BY ITS COURT APPOINTED REHABILITATOR, THE OFFICE OF THE COMMISSIONER OF INSURANCE FOR THE STATE OF WISCONSIN,<br><br>Appellants,<br><br>v.<br><br>LAS VEGAS MONORAIL COMPANY, a Nevada non-profit corporation,<br><br>Appellees. | |

**EMERGENCY MOTION FOR STAY PENDING APPEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8005**

(ORAL ARGUMENT REQUESTED)

Laurel E. Davis (NV Bar. No. 3005)
Craig S. Dunlap (NV Bar. No. 4974)
Jeffrey J. Steffen (NV Bar No. 9912)
FENNEMORE CRAIG, P.C.
Bank of America Plaza, Suite 1400
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
Facsimile: (702) 692-8064
ldavis@fclaw.com

William P. Smith (IL Bar No. 6187205) *
James W. Kapp III (IL Bar No. 6239269) *
Miles W. Hughes (IL Bar No. 6279176) *
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street, Suite 4400
Chicago, Illinois 60606-5096
Telephone: (312) 372-2000
Facsimile: (312) 984-7700

* Admitted Pro Hac Vice

Attorneys for (i) the Segregated Account of Ambac Assurance Corporation, by its Court Appointed Rehabilitator, the Office of the Commissioner of Insurance for the State of Wisconsin and (ii) Ambac Assurance Corporation

FENNEMORE CRAIG, P.C.
LAS VEGAS

94553.1/27952.001

Case 2:10-cv-00678-JCM-LRL   Document 27   Filed 06/24/10   Page 2 of 19

**EMERGENCY MOTION FOR STAY PENDING APPEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8005**

(ORAL ARGUMENT REQUESTED)

Ambac Assurance Corporation, on its own behalf and for The Segregated Account of Ambac Assurance Corporation, and The Segregated Account of Ambac Assurance Corporation by its court appointed Rehabilitator, the Office of the Commissioner of Insurance for the State of Wisconsin, (collectively "**Ambac**"),[1] pursuant to Federal Rule of Bankruptcy Procedure 8005, hereby move this Court (the "**Motion**")[2] to stay the proceedings in the Bankruptcy Court pending this Court's determination of Ambac's appeal of the Bankruptcy Court's Order Regarding Ambac's Motion to Dismiss entered on April 26, 2010 ("**Order**"), a copy of which is attached hereto as Exhibit A. In support of its Motion, Ambac states as follows:

## I.    SUMMARY OF BACKGROUND

On January 13, 2010, Las Vegas Monorail Company ("**LVMC**" or "**Debtor**") filed a voluntary chapter 11 case in the Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**"), with the Honorable Bruce A. Markell (the "**Bankruptcy Judge**") presiding. On that same date, Ambac filed its motion to dismiss the Debtor's bankruptcy case (Bankruptcy Court Docket No. 8) (the "**Motion to Dismiss**") on the basis that the Debtor was a "municipality" and therefore ineligible to file a chapter 11 case under the Bankruptcy Code. On February 17, 2010,

---

[1] Ambac, at the request and with the approval of the Office of the Wisconsin Commissioner of Insurance ("Commissioner"), established on March 24, 2010, a segregated account (the "Segregated Account") for certain contracts, including the Surety Bond and the Policy for the 1st Tier Bonds. The Commissioner then commenced rehabilitation proceedings for the Segregated Account in the Circuit Court for Dane County, Wisconsin.

[2] Contemporaneously with the filing of this Motion, Ambac has also filed its Emergency Request for Certification for Direct Appeal to the Court of Appeals for the Ninth Circuit (the "Emergency Request") and its Emergency Motion for Order Shortening Time to (I) Hear Emergency Motion for Stay Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8005, and (II) Emergency Request for Certification for Direct Appeal to the Court of Appeals for the Ninth Circuit (the "Emergency Hearing Motion") and an affidavit in support thereof, wherein Ambac sets forth the reasons, pursuant to Bankruptcy Rule 8011(d) and Local Civil Rules 6-1, 7-2, and 16-1 as to why an expedited hearing on the Motion is necessary. Furthermore, and as set forth below, the exact relief sought in this Motion, i.e. a stay pending appeal under Bankruptcy Rule 8005, was first presented to the Bankruptcy Court and denied. As explained below, the Bankruptcy Court abused its discretion by utilizing an incorrect legal standard in denying Ambac's request for a stay pending appeal and by minimizing the importance of the facts as presented to this Court via this Motion.

FENNEMORE CRAIG, P.C.
LAS VEGAS

94553.1/27952.001

2

the Bankruptcy Court held a hearing on the Motion to Dismiss. On April 22, 2010, more than two months later, the Bankruptcy Court entered its order denying the Motion to Dismiss (the **"Order"**). Consequently, on May 10, 2010, Ambac timely appealed the Order, which is presently before this Court. The key issues Ambac raises on appeal are:

- Whether the Bankruptcy Court erred as a matter of law when it concluded that the Debtor qualifies as a "person" under section 101(41) of the Bankruptcy Code that is eligible to be a debtor under chapter 11 pursuant to section 109(d) of the Bankruptcy Code?

- Whether the Bankruptcy Court's determination that the Debtor was eligible to be a debtor under chapter 11 of the Bankruptcy Code violated the United States Constitution?

## II. THE BANKRUPTCY COURT'S ORDER DENYING AMBAC'S MOTION FOR STAY PENDING APPEAL

Bankruptcy Rule 8005 provides that a motion for stay pending appeal shall first be made to the bankruptcy court. FED. R. BANKR. P. 8005. On May 12, 2010, Ambac filed its *Motion for Stay Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8005* (the **"Initial Stay Motion"**) with the Bankruptcy Court. Ambac's position was supported by, among other things, undisputed facts including LVMC's own explicit admission that LVMC is an instrumentality of the State of Nevada, and the Bankruptcy Court's findings that the Governor of the State of Nevada had "expansive" and "significant" control over the Debtor. *See* Order, pp. 4 n.3, 37. Ambac also cited applicable legal authority that supported its position that LVMC is an instrumentality of the State and ineligible to file under chapter 11. In addition, Ambac demonstrated that it would suffer irreparable harm if LVMC's reorganization proceeded during the pendency of the appeal, since any reorganization would have to be unwound in the event of a reversal. Despite Ambac's showing of likelihood of success on appeal and irreparable harm absent a stay, on May 19, 2010, the Bankruptcy Court entered its order denying the Initial Stay

Motion (the **"Stay Motion Order"**), a copy of which is attached as Exhibit B.[3] In its Stay Motion Order, the Bankruptcy Court rejected Ambac's request for a stay, although acknowledging that if Ambac succeeds on appeal any reorganization will have to be unwound. (Stay Order at 6.) For the reasons set forth below, Ambac respectfully submits that the Bankruptcy Court abused its discretion in denying the Initial Stay Motion.

III.   **JURISDICTION AND REQUEST FOR RELIEF**

Because this Court has docketed the appeal, the District Court now has jurisdiction to stay the bankruptcy proceedings under Bankruptcy Rule 8005 pending resolution of this appeal. *See* Fed R. Bankr. P. 8005, District Court Docket Nos. 23 & 24. Bankruptcy Rule 8005 provides, in relevant part, that a motion for stay pending appeal "may be made to the district court ..., but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge." FED. R. BANKR. P. 8005. As set forth above, Ambac first sought a stay pending appeal before the Bankruptcy Court, which was denied. The Bankruptcy Court incorrectly decided that what Ambac was seeking in its Initial Stay Motion was an injunction, as opposed to a stay pending appeal, and incorrectly determined that Rule 8005 was inapplicable. *See* Denial of Stay Pending Appeal at p.2 l. 20-23 [Bankruptcy Docket #405]. Furthermore, the Bankruptcy Judge found that Ambac was required to commence an adversary proceeding in order to obtain such injunction. *See* Stay Motion Order, p. 4 n.3 ("To the extent that the court is correct about a lack of authority to stay the entire case..., and if Rule 8005 is otherwise not applicable, Ambac's motion is deficient in that the injunction it seeks would require the commencement of an adversary proceeding, and this it has not done."). Therefore, Ambac was unable to obtain a stay pending appeal from the Bankruptcy Court since the Bankruptcy Judge abused his discretion by

---

[3] Ambac has appealed the Bankruptcy Court's denial of, what it characterized as, the request for injunctive relief. In addition, in light of LVMC's position that the appeal of the Order will become equitably moot once a plan is substantially consummated (with which Ambac disagrees), Ambac has also filed a motion to deem this appeal as an appeal as of right under the Collateral Order Doctrine. Nothing contained herein shall constitute a waiver of Ambac's right to request that this Court grant its alternative Motion for Leave to Appeal, or to present any other arguments or theories on appeal. All such rights are expressly preserved.

applying an incorrect legal standard to Ambac's Initial Stay Motion.[4]  Accordingly, Ambac makes a renewed request for a stay pending appeal in this Court pursuant to Bankruptcy Rule 8005.

## IV. THE NEED FOR AN EMERGENCY HEARING

The Debtor is moving rapidly towards confirmation of a plan. The Bankruptcy Court has recently extended the Debtor's exclusivity period for filing a plan until June 25, 2010, and the Debtor will seek confirmation shortly thereafter. The Debtor also asserts that by the time this appeal is decided the plan, "will have been confirmed and likely will be substantially consummated." See Debtor's Opposition to Motion for Leave to Appeal at 13, l. 7-9. Given the possibility of a plan being substantially consummated before a meaningful appellate review can be performed Ambac seeks emergency relief.

Ambac's appeal raises the significant question of whether the Bankruptcy Court has jurisdiction over the chapter 11 petition filed by the Debtor. Although jurisdictional issues typically cannot be rendered moot by substantial consummation of a plan or reorganization, *see Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1189 (9th Cir. 2000), the Debtor has asserted that Ambac's appeal will be rendered moot by the substantial consummation of the plan of reorganization. (*See* Debtor Appellee's Opposition to Motion for Leave to Appeal by Ambac Assurance Corporation and the Segregated Account of Ambac Assurance Corporation at 13, l. 8-9 [Bankruptcy Court Docket #408](hereinafter "Debtor's Opposition to Motion for Leave to Appeal"). The Debtor's litigation strategy is to effectively deprive Ambac of its right to an appeal. The Bankruptcy Court's Stay Motion Order (which is discussed in more detail below) will likely have the Debtor's desired effect, effectively depriving Ambac of its right to appeal.

Accordingly, as the Debtor is moving swiftly to propose a plan and is attempting to

---

[4] The Bankruptcy Court alternatively addressed each of the factors ordinarily analyzed in a request for a stay pending appeal: (1) appellant's likelihood of success on the merits of the appeal; (2) whether appellant will suffer irreparable injury absent a stay; (3) whether issuing the stay will substantially injure the appellee or the defendant; and (4) the public interest.  As Ambac will show below, the Bankruptcy Court also abused its discretion with regard to its analysis of each of these factors.

confirm the plan before Ambac's appeal may be considered, Ambac seeks this Court's intervention, on an emergency basis, in staying the proceedings before the Bankruptcy Court to ensure that Ambac has its day in court on appeal in order to address these important legal issues with constitutional implications. Expediency in determining this issue is also required since allowing the Bankruptcy Court to continue proceeding while the appeal is pending has caused and will continue to cause the unnecessary expenditure of the estate's and the Bankruptcy Court's time and resources. Accordingly, Ambac respectfully asks this Court to stay the bankruptcy proceedings on an emergency basis.

## V.  STATEMENT OF FACTS

LVMC is a nonprofit public benefit corporation that owns and operates a monorail that runs 3.9 miles just east of the Las Vegas Strip ("**Monorail**"). Order at 2. Although LVMC's ridership has never met its projections, its revenues have exceeded its operating expenses, leaving it more than $5 million in annual profits before debt service. *Id.* at 4. LVMC's profits have not been able to cover its debt, which consists primarily of the repayment of a loan from the Director of the State of Nevada Department of Business and Industry (the "**Director**") of the approximately $650 million the Director raised by issuing three series of tax-exempt bonds, with the first series (the "**1st Tier Bonds**") having a principal amount of approximately $450,000,000 and the two junior series of bonds making up the remainder. Order at 2-3, 3 n.2.

Ambac has insured the payment of scheduled amounts of principal and interest on the 1st Tier Bonds pursuant to its Municipal Bond Insurance Policy Number 17548BE, dated September 20, 2000 (the "**Policy**"). *See* Declaration of Scott Zuchorski (the "**Declaration**") (which was filed with the Bankruptcy Court on January 13, 2010 (Bankruptcy Docket No. 9) at ¶ 12. In addition, Ambac has guaranteed payments from the Debt Service Reserve Fund for the 1st Tier Bonds in an amount not to exceed $20,991,807.50 under a surety bond (the "**Surety Bond**") it issued to the Trustee. *Id.* To date, Ambac has made payments under the Policy and the Surety Bond in the aggregate amount of $20,532,771.15, due to LVMC's failure to pay the required

installments of interest on the 1st Tier Bonds as and when due under the Financing Agreement and Senior Indenture. *Id.* at ¶ 13.[5]

On January 13, 2010, LVMC filed a petition under Chapter 11 of the Bankruptcy Code. That day, Ambac filed its Motion to Dismiss LVMC's petition on the grounds that LVMC is an instrumentality of the State of Nevada and therefore not a "person" eligible for filing under chapter 11. The Bankruptcy Court held a hearing on Ambac's Motion to Dismiss on February 17, 2010. On April 26, 2010, the Bankruptcy Court denied Ambac's Motion. *See* Order. On May 10, 2010, Ambac filed a Notice of Appeal, an Election to Have the Appeal Heard by the District Court, and a Motion for Leave to Appeal, seeking the district court's review of the Order denying Ambac's Motion to Dismiss. On May 12, 2010, Ambac filed a Motion for Stay Pending Appeal before the Bankruptcy Court, which the Bankruptcy Court denied on May 19, 2010. *See* Denial of Stay Order.

On May 24, 2010, the Debtor filed its Opposition to Motion for Leave to Appeal. In that Opposition, the Debtor asserted that Ambac's appeal would be mooted by a plan of reorganization, which the Debtor seeks to substantially consummate before Ambac's appeal may be heard. *See* Debtor's Opposition to Motion for Leave to Appeal at 13, l. 8-9. In sum, the Debtor argued that Ambac's appeal would be effectively unreviewable on appeal at the end of the proceedings. Accordingly, on June 8, 2010, Ambac filed a Motion to Treat the May 10, 2010 Notice of Appeal as an Appeal as of Right Pursuant to the Collateral Order Doctrine. Then, on June 10, 2010, the clerk of the Bankruptcy Court transmitted the record on appeal to this Court. On June 17, 2010 this Court filed the Certificate of Bankruptcy Record on Appeal and issued a Minute Order regarding briefing. *See* Docket Nos. 23 & 24. Accordingly, this matter is now before this Court, and Ambac hereby moves this Court to stay the proceedings in the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 8005.

---

[5] In addition to its obligations under the Policy and the Surety Bond, Ambac owns approximately $8.5 million in the principal amount of 1st Tier Bonds. Declaration at ¶ 12. As noted by the Bankruptcy Court, Ambac estimates that its exposure over the life of the bond issue is about $1.16 billion. *See* Order at 4 n.5.

## VI.   LEGAL AUTHORITY

Federal Rule of Bankruptcy Procedure 8005 provides in pertinent part:

> Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

The quoted language of Rule 8005 is an exception to Rule 7062; it permits the court, notwithstanding a stay of any adversary proceeding under Rule 7062, to suspend or continue any or all other proceedings in the case. Moreover, by the plain language of Rule 8005, the Bankruptcy Court has the power to suspend the proceedings or *"make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest."* Fed. R. Bankr. P. 8005 (emphasis added). "Rule 8005 is sufficiently flexible to permit a court to fashion relief tailored to the needs of a given case." *In re Herrera*, 2010 Bankr. LEXIS 107, *2 (Bankr. W.D. Tex. Jan. 8, 2010) (citing *In re Gleasman*, 111 B.R. 595, 599 (Bankr. W.D. Tex. 1990), and *In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49 (Bankr. S.D.N.Y. 1988)). Thus, contrary to the Bankruptcy Court's conclusion in the Denial of Stay Order, the Bankruptcy Court had the authority under Rule 8005 to suspend the proceedings during the pendency of the appeal to protect the rights of all parties in interest. As shown below, a stay is necessary in this case to do just that.

In determining whether to stay a proceeding pending appeal, courts generally consider four elements: (1) appellant's likelihood of success on the merits of the appeal; (2) whether appellant will suffer irreparable injury absent a stay; (3) whether issuing the stay will substantially injure the appellee or the defendant; and (4) the public interest. *Adelson v. Smith (In re Smith)*, 397 B.R. 134, 136 (Bankr. D. Nev. 2008) (Markell, B.J.); *see also Zamora v. Virtue (In re Continental Coin Corp.)*, Nos. CV 08-0093 (PA), CV 08-1478 (PA), & CV 08-2504 (PA), 2009 U.S. Dist. LEXIS 74392, at *28 (C.D. Cal. Aug. 21, 2009) (a copy of the *Zamora* opinion is

attached hereto as Exhibit C).

Although a stay pending appeal is an extraordinary remedy, *Adelson*, 397 B.R. at 136, "[b]ankruptcy courts should primarily consider the administration of the bankruptcy estate" when deciding whether to grant a stay. *Zamora*, 2009 U.S. Dist. LEXIS 74392, at *29. In *Zamora*, the bankruptcy court granted the trustee's request for a stay pending appeal, in part, because the trustee "at least has a colorable chance of prevailing." *Id.* But, even more importantly, the court explained that without the stay the trustee "would be harmed by the cost of litigating claims that may turn out to be non-cognizable as a matter of law," and such needless litigation costs would harm the administration of the bankruptcy and be borne not only by the trustee, but "also lead to diminution of the estate and adversely affect distribution to other creditors." *Id.* The court further reasoned that the stay was in the public interest because "going forward with the merits of the case while an appeal is pending on the very question of what is actionable would be a serious waste of time, money, and judicial resources." *Id.* at *30 (internal quotation marks and ellipses omitted).

That reasoning applies equally here. Not only does Ambac have a likelihood of succeeding on the merits of appeal for the reasons set forth below, but because Ambac's appeal raises constitutional issues that go to the very question of whether the Bankruptcy Court has jurisdiction and constitutional authority over LVMC, a stay pending the resolution of that issue will (i) avoid needless expense and the diminution of the estate, (ii) conserve the time and resources of the Court and (iii) avoid hardship being inflicted upon LVMC's creditors and parties in interest during the unwinding of any unauthorized restructuring pursued while the appeal is pending.[6]

---

[6] Although several courts have held that the threshold issue of eligibility is not jurisdictional, *see, e.g., In re Wenberg*, 94 B.R. 631, 637 (B.A.P. 9th Cir. 1988) *aff'd Wenberg v. FDIC (In re Wenberg)*, 902 F.2d 768 (9th Cir. 1990) (noting that Section 109 eligibility is not jurisdictional); *In re First Assured Warranty Corp.*, 383 B.R. 502, 518-19 (Bankr. D. Colo. 2008) (although the issue of whether the debtor is eligible for relief is not jurisdictional, dismissal for failure to meet the requirements for filing a petition is a core issue), LVMC's lack of eligibility to be a debtor under chapter 11 results from it being an instrumentality of the State, and thereby touches upon the constitutional issue of whether a federal court may exercise power over an instrumentality of a State. *See In re City of Desert Hot*

### A. Ambac Has a Likelihood of Success on the Merits of Its Appeal.

Ambac's Motion to Dismiss questioned whether the Bankruptcy Court has jurisdiction and constitutional authority over LVMC's chapter 11 filing because LVMC constitutes an "instrumentality of the State". The central question of law presented in Ambac's Motion to Dismiss is whether LVMC is a "person" otherwise eligible to seek chapter 11 protection pursuant to 11 U.S.C. § 109(d). The definition of "person," however, specifically excludes a "governmental unit." 11 U.S.C. § 101(41). Furthermore, the term "governmental unit" is defined to specifically include a "municipality." 11. U.S.C. § 101(27). "Municipality" is defined to include "a political subdivision or public agency or instrumentality of a State." 11 U.S.C. §101(40). Therefore, a "person" eligible for chapter 11 protection cannot be an "instrumentality of the State" and, in turn, a "municipality."

Whether LVMC is an "instrumentality of the State" is a purely legal issue.[7] See Order at 6 ("Determining the proper scope of section 101(40)'s use of 'instrumentality' raises significant questions of statutory interpretation.") As such, on appeal the district court will review the denial of Ambac's Motion to Dismiss *de novo*. *Adelson*, 397 B.R. at 137 n.3 (acknowledging that standard of review applicable to the appeal is a consideration when evaluating a party's likelihood of success).

Ambac has a likelihood of succeeding on its appeal because the Order creates a legal framework for analyzing the question of whether LVMC is an instrumentality of the State that has not been used by any other court. Indeed, there is no controlling decision of the Ninth Circuit Court of Appeals on the question of law addressed by the Bankruptcy Court in the Order, as even the Bankruptcy Court itself acknowledged. *See* Denial of Stay Order, p. 5 ("[T]he court applied a

---

*Springs*, 339 F.3d 782, 789 (9th Cir. 2003) ("Congress, in an effort to avoid possible constitutional problems, designed chapter 9 of the bankruptcy code in a manner much different from the other chapters. Many of the protections afforded to creditors in the other chapters are missing in chapter 9.") (citing *In re Richmond Sch. Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991)). Such a constitutional issue implicates the jurisdiction and power of a federal court, and thereby LVMC's lack of eligibility under chapter 11 is a jurisdictional issue in this instance.

[7] *See In re Greene County Hosp.*, 59 B.R. 388, 389 (Bankr. S.D. Miss. 1986) (whether Greene County Hospital is a municipality involves a question of "reviewable legal conclusions").

diverse and scattered body of case law involving chapter 9 eligibility in an area no reported case had tackled: the assertion that a debtor was ineligible for chapter 11 because it was a municipality.").[8]

However, case law and statutory guidance exists with respect to the defining characteristics of a "municipality" or an "instrumentality of a State" under section 101(40) of the Bankruptcy Code. Courts addressing the scope of the term "municipality" focus upon the extent to which the entity in question is subject to control by the state or other municipal authority. *See In re Greene County Hosp.*, 59 B.R. at 389; *In re Westport Transit Dist.*, 165 B.R. 93, 95 (Bankr. D. Conn. 1994); *In re Ellicott School Bldg. Auth.*, 150 B.R. 261, 264 (Bankr. D. Colo. 1992). Moreover, when enacting the existing definition of municipality in 1976, Congress intended "to broaden applicability of Chapter IX as much as possible." H.R. Rep. No. 94-686, 94th Cong., 1st Sess. 20 (1975); *see* 6 Collier on Bankruptcy, ¶ 900.02[2][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (noting Congress's intention to have a broad definition of "municipality").

Honoring this clear expression of legislative intent, a great majority of the courts that have considered the issue have determined that a putative debtor that otherwise lacks traditional governmental powers (*e.g.*, the power to levy taxes, the power to exercise eminent domain, etc.) is nevertheless a "municipality" for bankruptcy purposes if it is controlled by the state, county or other municipality. *E.g., In re Greene County Hosp.*, 59 B.R. at 389-90 (Bankr. S.D. Miss. 1986) (community hospital held to be a municipality based on a county board of supervisor's control over the ownership or leasing of hospital property); *Ex parte York County Natural Gas Auth.*, 238

---

[8] As set forth above, the Bankruptcy Court admits that there is no controlling or binding precedent with regard to the issue made the subject of this appeal. Accordingly, this issue of first impression is exactly what the certification procedures were designed to address. *See* 28 U.S.C. § 158(d)(2)(A)(i) (providing that the appropriate court of appeals shall have jurisdiction if, in relevant part, the district court certifies, in relevant part, that "[t]he judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States...."). The District Court may make such a certification on its own motion. *See* 28 U.S.C. § 158(d); FED. R. BANKR. P. 8001(f)(4).

F. Supp. 964, 976 (W.D.S.C. 1965) ("The legal test between a private or public authority or agency is whether the authority or agency is subject to control by public authority, state or municipal"); *In re Westport Transit Dist.*, 165 B.R. at 95 (recognizing that a putative debtor is a municipality if it is subject to control by a public authority, the state, or a municipality) (citations omitted); *In re Ellicott School Bldg. Auth.*, 150 B.R. at 264 (following the control tests described in *Greene County Hospital* and *York County Natural Gas Authority*, but holding that the putative debtor was not a municipality because "no governmental entity exercises any right of control" over the authority).

Although the Bankruptcy Court described many of the relevant "municipality" cases and statutory authorities in its Order, it largely declined to follow this body of law in favor of a new legal framework. The focus of the Bankruptcy Court's new test is whether state control exists "to protect public finances or the public fisc" or in relation "to essential state sovereignty and essential state functions." Order at 37. The new test has little case law or statutory support. In fact, the new instrumentality test created by the Court contradicts the Congressional intention for the Bankruptcy Code definition of "municipality" to be expansive. Likewise, this new test runs contrary to the relevant case decisions, all of which emphasize the **existence** of state control, **not the purpose** of state control, in deciding whether a putative debtor is an instrumentality of the state or other municipality for bankruptcy-eligibility purposes. Accordingly, the Bankruptcy Court abused its discretion in creating a new legal framework which contravenes existing case law. Because the new instrumentality test crafted by the Bankruptcy Court conflicts with and/or contravenes applicable case law and legal authority, which support Ambac's position that LVMC is an instrumentality of the State of Nevada, Ambac has a likelihood of success on the merits of its appeal.

B.   **Ambac Will Suffer Irreparable Harm Absent a Stay Pending Appeal.**

The second consideration in determining whether to issue a stay pending appeal is whether the movant will suffer irreparable harm without a stay. *Adelson*, 397 B.R. at 146. In

other words, the movant has to show "a reasonable likelihood of future injury." *Id.* (quoting *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003)).

Proceeding with the administration of this chapter 11 case and the reorganization of LVMC in the face of Ambac's pending appeal is reasonably likely to cause Ambac, and other interested parties, injury. In particular, Ambac's appeal questions whether the Bankruptcy Court has the authority to reorganize LVMC under chapter 11 of the Bankruptcy Code. Although the resolution of such a dispute (which invokes Constitutional and jurisdictional issues) should not be rendered moot by the Bankruptcy Court's substantial consummation of a plan for LVMC,[9] the Debtor contends that it will be. Consequently, the Debtor is attempting to move swiftly in confirming a plan, which will obviously severely impair, if not eliminate the debt owed to the bond holders, triggering immense financial exposure for Ambac. Furthermore, assuming the Debtor's mootness arguments are correct, failure to provide Ambac with a stay, combined with swift confirmation of the Debtor's proposed plan, will effectively lead to eliminating Ambac's right to be heard on appeal on important constitutional issues of first impression. These facts alone establish the substantial harm that Ambac will suffer if a stay is not granted.

In addition, if this Court on appeal concludes that the Bankruptcy Court lacks jurisdiction to implement such a plan, any restructuring accomplished by LVMC will have to be unwound after appeal. The practical difficulties of undoing such a restructuring could wreak havoc upon the interests of not only Ambac (as set forth above), but also LVMC and all of its creditors. Indeed, depending upon the nature of the restructuring, the efforts to undo LVMC's restructuring may unavoidably lead to substantial unfairness being inflicted upon innocent creditors, vendors and other parties in interest. Moreover, to the extent that distributions made to individual

---

[9] *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1189 (9th Cir. 2000) ("This appeal is not moot if the bankruptcy court lacked jurisdiction to proceed with Padilla's bankruptcy during the pendency of this appeal."). While the appeal as to whether Padilla's bankruptcy petition should be dismissed for bad faith was pending with the appellate court, the bankruptcy court reinstated Padilla's petition, proceeded with the bankruptcy, discharged Padilla's debts and subsequently closed the bankruptcy case. *Id.* at 1188. Nonetheless, the *Padilla* court found that the timely filing of the appeal divested the bankruptcy court of the ability to proceed with Padilla's bankruptcy. *Id.* at 1189.

FENNEMORE CRAIG, P.C.
LAS VEGAS

94553.1/27952.001                    13

creditors are not recoverable in such an "unwinding" scenario, or cannot be recovered in a efficient or cost-effective manner, creditors, including Ambac, could potentially be treated in an inconsistent manner than other "like" creditors, depending upon the ultimate resolution, and all creditors will suffer because the smaller pot from which to recover distributions will be smaller.

Accordingly, the possibility exists that LVMC could incur substantial expenses pursuing a reorganization that could ultimately be for naught. *See Zamora*, 2009 U.S. Dist. LEXIS 74392, at *29-30 (affirming the entry of a stay pending appeal because, among other things, the movant would be harmed by the cost of litigating claims that potentially were not cognizable as a matter of law). In such event, not only would LVMC's restructuring efforts be null and void, but the very real costs incurred by LVMC in pursuing such a restructuring (costs which Ambac understands are being incurred now and which will presumably only increase in the upcoming weeks and months) would significantly diminish the value of LVMC's estate and the amount of the distributions potentially available to all of LVMC's creditors, not just to Ambac. Thus, in the event that this Court on appeal reverses the Bankruptcy Court with respect to the Order on the Motion to Dismiss, LVMC's estate will be forced to suffer the needless expenditure of resources in pursuing a restructuring while the appeal is pending (expenses which are being incurred by LVMC's estate at this very moment). Moreover, LVMC's estate will also be required to expend tremendous time and resources subsequently "unwinding" the invalid restructuring.

Ambac has a real and undeniable interest in ensuring that LVMC's revenues are spent prudently, an interest that exceeds that of a typical creditor. Ambac is the only party in this case, other than LVMC itself, that may have payment obligations to LVMC's creditors. Pursuant to the Policy and Surety Bond, Ambac has an obligation to pay all scheduled amounts of principal and interest on the 1st Tier Bonds that are not paid by LVMC. If this Court ultimately reverses the Order, the funds expended pursuing such a restructuring will needlessly reduce the resources left for LVMC to pay the 1st Tier Bonds. Likewise, the funds and resources spent by LVMC's estate subsequently "unwinding" such an invalid restructuring will only further exacerbate Ambac's

own financial obligations on the 1st Tier Bonds.

Because the real possibility exists this Court could determine that LVMC is not a "person" eligible for chapter 11 protection, LVMC's estate should not expend the time and resources pursuing a chapter 11 reorganization in the Bankruptcy Court until Ambac's appeal is resolved. If LVMC incurs the significant cost inherent in pursuing a restructuring only to have an appellate court ultimately determine that LVMC does not have authority to pursue such a restructuring in chapter 11, the harm inflicted upon Ambac and all of LVMC's creditors will be substantial and could have been avoided by granting Ambac's request for a stay pending appeal.

### C. LVMC Will Not Be Harmed by a Stay.

In sharp contrast to the harm that Ambac will suffer if the bankruptcy proceedings are not stayed pending its appeal in this case, neither LVMC nor any other interested party will be injured if a stay is granted. Indeed, while the appeal is pending, LVMC will continue to operate, pay its operating expenses and generate revenues. Even LVMC has recently acknowledged that, although it experienced some losses in January and February 2010, those losses are not continuing and its operations generate revenue. (*See* Omnibus Reply to the Oppositions Filed By: (1) Wells Fargo Bank, N.A., As Indenture Trustee, (2) Ambac Assurance Corporation, and (3) the Director of the State of Nevada, Department of Business and Industry, to the Debtor's Motion for Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, p.4 [Bankruptcy Docket No. 326].) The Bankruptcy Court even acknowledged in its Denial of Stay Order that "[i]t is true that LVMC could fund its interim operations from the cash flow it generates…." Denial of Stay Order, p. 7.

Yet, despite explicitly finding that LVMC could continue to operate in the ordinary course, the Bankruptcy Court nonetheless speculated that any delay may hinder the Debtor's ability to reorganize. In attempting to support this statement, the Bankruptcy Court notes that "LVMC has already sought to extend exclusivity and has cited similar injury due to the delay between the hearing of the motion to dismiss, and this court's order denying that motion." Denial

of Stay Order, p. 7 n. 6. First, a debtor seeking to extend its exclusivity period is a common occurrence in large bankruptcies and wholly fails to provide any support indicating harm to the Debtor. Second, to place the onus of any alleged harm caused to the Debtor by the two-month delay between the February 17 hearing on the Motion to Dismiss and the Bankruptcy Court's entry of its Order, a delay which was solely within the Bankruptcy Court's power, is improper and constitutes an abuse of discretion. As set forth above, and acknowledged by the Bankruptcy Court and LVMC, institution of a stay pending appeal will not affect the Debtor's ability to operate in the ordinary course. Accordingly, the Debtor will suffer no harm.

Similarly, no other party will be injured if a stay is granted. Indeed, as discussed above, LVMC's creditors will benefit from avoiding the incurrence of unnecessary restructuring costs until it is determined through the resolution of the appeal that LVMC is entitled to pursue such a restructuring in this chapter 11 proceeding. Moreover, LVMC's customers will not be harmed as the Monorail will continue to operate in the ordinary course of business while the appeal is pending.

Although this Court may condition a stay upon the posting of a bond under Federal Rule of Bankruptcy Procedure 8005, a bond is unnecessary in this case. *See In re Swift Aire Lines, Inc.*, 21 B.R. 12, 14-16 (9th Cir. BAP 1982) (explaining that imposition of bond requirement is discretionary). "A bankruptcy court issuing a stay under Rule 8005 need not require the posting of a bond" and, under certain conditions, courts in this circuit have refused to require one. *See Zamora*, 2009 U.S. Dist. LEXIS at 31 (citations omitted) (affirming bankruptcy court's decision not to require trustee to post bond). In determining whether to require a bond, courts evaluate whether there is a need to "secure the prevailing party against any loss that might be sustained as a result of ineffectual appeal." 9 Collier on Bankruptcy P. 8005.07[2]. In this case, there is no need for a bond because LVMC will suffer no injury if its reorganization is delayed, since it will continue to carry on its operations. Therefore, even if Ambac ultimately does not prevail in its appeal, LVMC will not be injured. Accordingly, this Court should decline to impose a security

requirement.

### D. A Stay Forwards the Public Interest.

The final consideration for the Court when deciding whether to stay the proceedings pending appeal is where the public interest lies. "There is a great public interest in the efficient administration of the bankruptcy system." *Adelson*, 397 B.R. at 148. Moreover, a stay is in the public interest when "going forward with the merits of the case while an appeal is pending on the very question of what is actionable would be a serious waste of time, money, and judicial resources." *Zamora*, 2009 U.S. Dist. LEXIS 74392, at *30 (internal quotation marks and ellipses omitted).

In this case, the public interest in the efficient administration of the bankruptcy system would be forwarded by a stay. A stay of the proceedings pending Ambac's appeal of the Order will conserve the resources and time of the Bankruptcy Court. Furthermore, institution of the stay will forward the public interest in maintaining and instilling confidence in the judiciary. In this respect, and as set forth above, if the Debtor's premonitions come true and substantial consummation of its proposed plan renders Ambac's appeal moot, then Ambac will have been denied its statutory right to be heard in court on appeal. Yet, if a stay is instituted, thereby assuring that such a scenario never comes to light, then the public's confidence in the judiciary system will not be affected. The Debtor cannot reasonably contend that confidence in the judiciary system is not an important public interest justifying imposition of a stay in this case.

### VII. CONCLUSION

For the reasons set forth in this Motion, Ambac respectfully requests that this Court grant Ambac's request for a stay pending appeal. As set forth below and in Ambac's previous motion, Ambac has a likelihood of success in the merits of its appeal. Indeed, if Ambac succeeds in its appeal, the Bankruptcy Court will not have the authority to confirm any plan of reorganization for LVMC under chapter 11. In addition, Ambac, as a large creditor and insurer of payments on the 1st Tier Bonds, risks irreparable injury if the Bankruptcy Court proceeds with such a

reorganization pending Ambac's appeal. Proceeding with the reorganization at this time, in the face of the possibility that the Bankruptcy Court lacks jurisdiction over LVMC's petition and authority to proceed in this chapter 11 case, could waste the Bankruptcy Court's, LVMC's and its creditors' time and resources and inflict needless hardship upon innocent parties during the unwinding of any such restructuring, which the Debtor is seeking to conclude quickly.

On the other hand, LVMC will not be harmed by a stay pending appeal since its operating revenues, by LVMC's own admissions, are sufficient to support its ongoing operations. During the requested stay, LVMC would continue to operate in the ordinary course of business and would continue to comply with the Bankruptcy Court's orders pertaining to cash collateral. At the same time, the requested stay ensures that LVMC's estate does not incur considerable expenses in pursuing a reorganization that is ultimately rendered null and void by this Court's determination that the Bankruptcy Court does not have authority over LVMC's chapter 11 petition. A stay pending appeal also furthers the public interest since it conserves the Bankruptcy Court's time and resources and results in an efficient bankruptcy administration. For these reasons, Ambac respectfully requests that this Court stay the Debtor's bankruptcy proceeding until the resolution of Ambac's appeal of the Order.

/ / /

Dated: June 24, 2010

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP
    William P. Smith (IL Bar No. 6187205)
    Steven S. Scholes (IL Bar No. 6191220)
    James W. Kapp III (IL Bar No. 6239269)
    Amy G. Doehring (IL Bar No. 6272148)

FENNEMORE CRAIG, P.C.

By:   /s/ Craig S. Dunlap
    Laurel E. Davis
    Craig S. Dunlap
    Jeffrey S. Steffen

*Attorneys for Ambac Assurance Corporation and The Segregated Account of Ambac Assurance Corporation, by its Court Appointed Rehabilitator, the Office of the Commissioner of Insurance for the State of Wisconsin*