1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.: No. BK-S-10-10464-BAM |
| LAS VEGAS MONORAIL COMPANY, a Nevada non-profit corporation, | Chapter 11 |
| Debtor. | USDC   Case   No.:   2:10-cv-00678-JCM-LRL |
| AMBAC ASSURANCE CORPORATION; and THE SEGREGATED ACCOUNT OF AMBAC ASSURANCE CORPORATION, BY ITS COURT APPOINTED REHABILITATOR, THE OFFICE OF THE COMMISSIONER OF INSURANCE FOR THE STATE OF WISCONSIN, | **APPELLANTS' OPENING BRIEF** |
| Appellants, | |
| v. | |
| LAS VEGAS MONORAIL COMPANY, a Nevada non-profit corporation, | |
| Appellees. | |

95092.1/27952.001

**TABLE OF CONTENTS**

I.    STATEMENT OF JURISDICTION .................................................................6

    A.    The Collateral Order Doctrine Applies to This Case. .................................6

    B.    Ambac's Motion for Leave to Appeal Should Be Granted ...........................9

II.   STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW .....................9

III.  STATEMENT OF THE CASE ....................................................................10

    A.    The Parties. ................................................................................10

    B.    The Undisputed Facts Regarding LVMC and the Bonds............................12

    C.    Bankruptcy Court Order Denying Ambac's Motion to Dismiss..................15

IV.   LEGAL ARGUMENT .............................................................................16

    A.    The Bankruptcy Code Prohibits a "Municipality" from Being a Chapter 11 Debtor, and the Tenth Amendment Prohibits a Bankruptcy Court from Exercising Jurisdiction over an Unauthorized Municipal Bankruptcy. .............................................17

    B.    LVMC Is a "Municipality" (*i.e.*, "Instrumentality of a State") Under the Bankruptcy Code Pursuant to Congress' Intent, Caselaw and Logic. ...........................................18

        1.    Congress Intended the Definition of "Municipality" Under the Bankruptcy Code to Be Expansive. .................................................................19

        2.    Pursuant to Applicable Caselaw, an Entity That Is Controlled by the State Is an "Instrumentality of a State" Under the Broad Definition of "Municipality" in the Bankruptcy Code. ........................................................................25

        3.    The Bankruptcy Court Misconstrued Applicable Caselaw, and Applied Its Instrumentality Test Without Legal Support...........................................30

        4.    Because LVMC Is Controlled by the Governor of the State of Nevada, LVMC Is an "Instrumentality of a State" Under the Broad Definition of "Municipality" in the Bankruptcy Code.........................................................................31

        5.    *In re Connector 2000 Association, Inc.*, Case No. 10-04467 (Bankr. D.S.C. June 24, 2010). ...........................................................................33

    C.    Alternatively, LVMC Is a "Municipality" Under the Bankruptcy Court's Instrumentality Test, LVMC Is Ineligible to Be a Chapter 11 Debtor, and LVMC's

Chapter 11 Case Must Be Dismissed. ..........................................................................35

V.   CONCLUSION ..................................................................................................................39

# TABLE OF AUTHORITIES

## CASES

26 U.S.C. § 146................................................................................................. 37

Brewer v. N.Y. Dept. of Corr. Servs. (In re Value-Added Commc'ns, Inc.), 216
B.R. 772 (N.D. Tex. 1997) ........................................................................ 7, 8, 9

Burlington N. & Santa Fe Rwy. Co. v. Vaughn, 509 F.3d 1085 (9th Cir. 2007) ........................ 7

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)....................................... 7

Coopers & Lybrand v. Livesay, 437 U.S. 463 (1978)................................................. 7

Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863 (1994) ............................... 7

Ex parte York County Natural Gas Auth., 238 F. Supp. 964 (W.D.S.C.
1965)..................................................................... 25, 26, 27, 29, 33, 34, 36

Fireman's Fund Ins. Co. v. Grover (In re: The Woodson Co.), 813 F.2d 266 (9th
Cir. 1987)............................................................................................. 10

Hamilton Creek Metro. Dist. v. Bondholders Colo. Bondshares (In re Hamilton
Creek Metro. Dist.), 143 F.3d 1381 (10th Cir. 1998) ............................................. 20

In re City of Bridgeport, 128 B.R. 688 (Bankr. D. Conn. 1991) ............................... 18, 20

In re Connector 2000 Assoc., Inc., Case No. 10-04467 (June 24, 2010) ................ 33, 34, 35, 36

In re County of Orange, 183 B.R. 594 (Bankr. C.D. Cal. 1995) ............................ 20, 25, 27, 28

In re Ellicott School Building Auth., 150 B.R. 261 (Bankr. D. Colo. 1992) 26, 27, 29, 30, 33, 36

In re Greene County Hosp., 59 B.R. 388 (S.D. Miss. 1986) ............ 25, 26, 27, 29, 30, 33, 34, 36

In re North and South Shenango Joint Municipal Authority, 14 B.R. 414 (Bankr.
W.D. Pa. 1981) ................................................................................... 30, 31

In re Pierce County Housing Auth., 414 B.R. 702 (Bankr. W.D. Wash. 2009)........................ 20

In re Pleasant View Util. Dist. of Cheatham County, 24 B.R. 632 (Bankr. M.D.
Tenn. 1982).................................................................................... 20, 31

In re Sullivan County Reg'l Refuse Disposal Dist., 165 B.R. 60 (Bankr. D.N.H.
1994)................................................................................................ 20

In re Valley Health Sys., 383 B.R. 156 (Bankr. C.D. Cal. 2009)................................. 20

In re Westport Transit Auth., 165 B.R. 93 (Bankr. D. Conn. 1994)....................... 26, 31, 34

New York City Off-Track Betting Corp., 2010 Bankr. LEXIS 791................................. 20

Will v. Hallock, 546 U.S. 345 (2006) ........................................................ 7, 8

## FEDERAL STATUTES

11 U.S.C. § 101....................................................................... 8, 17, 22

11 U.S.C. § 109.......................................................................... 17

26 U.S.C. § 142.......................................................................... 24

26 U.S.C. § 144 .................................................................................................... 24

28 U.S.C. § 158 .................................................................................................... 6, 9

**STATE STATUTES**

NRS § 82.196 ....................................................................................................... 32

NRS 82.471 §§ 82.471, et seq. ............................................................................ 32

**OTHER AUTHORITIES**

11 U.S.C. § 401 ................................................................................................... 19

124 Cong. Rec. 32,393 (1978) ............................................................................ 23

6 Collier on Bankruptcy ¶900.02 ........................................................ 20, 22, 26, 28

Act of April 8, 1976, Pub. L. No. 94-260, 90 Stat. 315 (1976) ....................... 19, 20, 22, 24, 25

Act of August 17, 1937, Pub. L. No. 302, 50 Stat. 653 (1937) ..................... 19, 20, 21

Act of July 1, 1946, Pub. L. No. 481, 60 Stat. 409 (1946) .......................... 20, 21, 22

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394 (1994) .......................... 25

Bedtime for [Industrial Development] Bonds?:  Municipal Bond Tax Legislation
   of the First Reagan Administration, 48 Law & Contemp. Probs. 213 (1985) ............... 22, 24

Black's Law Dictionary 46 (6th ed. 1990) ......................................................... 38

H.R. Rep. No. 2246, 79th Cong., 2d Sess. 2-3 (1946) ...................................... 21

H.R. Rep. No. 595, 95th Cong., 1st Sess (1977) ............................................... 18

H.R. Rep. No. 94-686, 94th Cong., 1st Sess. 4 (1976) ................................. 20, 22

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 313 (1977) ................................. 19

National Association of Bond Lawyers, Fundamentals of Municipal Bond Law
   102 (2003) .................................................................................................... 23, 24

U.S. Const. amend. X; S. Rep. No. 989, 95th Cong., 2d Sess. 110 (1978), reprinted
   in 1978 U.S.C.C.A.N. 5787 ............................................................................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

FENNEMORE CRAIG, P.C.

LAS VEGAS

1   Ambac Assurance Corporation and The Segregated Account of Ambac Assurance

2   Corporation ("**Segregated Account**") by its court appointed Rehabilitator, the Office of the

3   Commissioner of Insurance for the State of Wisconsin (the "**Rehabilitator**" and, collectively with

4   Ambac Assurance Corporation, "**Ambac**"), files this brief in support of its appeal, Notice of

5   Appeal [Docket No. 1] ("**Notice of Appeal**").   Ambac appeals and seeks reversal of the

6   Bankruptcy Court's denial of Ambac's Motion for Dismissal (the "**Motion to Dismiss**") of the

7   chapter 11 case (the "**Chapter 11 Case**") filed by the Las Vegas Monorail Company ("**LVMC**")

8   because LVMC is an "municipality" under section 101(40) of the Bankruptcy Code and therefore

9   LVMC is ineligible to be a chapter 11 debtor under section 109(d) of the Bankruptcy Code.

10  Accordingly, under the plain language of the Bankruptcy Code and to comport with the Tenth

11  Amendment of the U.S. Constitution, the Bankruptcy Court should have dismissed LVMC's

12  chapter 11 petition

13  **I.      STATEMENT OF JURISDICTION**

14  On May 10, 2010, Ambac timely filed its Notice of Appeal [A.E.R.01924, *et seq.*[1]], within

15  14 days of the entry of the Bankruptcy Court's Order Regarding Ambac's Motion to Dismiss

16  ("**Order**") on April 26, 2010.   Accordingly, this Court has jurisdiction over Ambac's appeal

17  under 28 U.S.C. § 158(a)(1) pursuant to the collateral order doctrine.   Alternatively, on May 10,

18  2010, Ambac timely filed its Motion for Leave to Appeal [A.E.R.01977, *et seq.*], and this Court

19  should grant that Motion and exercise jurisdiction over Ambac's appeal under 28 U.S.C. §

20  158(a)(3).

21  **A.      The Collateral Order Doctrine Applies to This Case.**

22  Under the collateral order doctrine, certain interlocutory orders may be appealed as of

23  right prior to final judgment.   The collateral order doctrine is not considered to be an exception to

---

[1]   Appellants' Excerpts of Record (Appendix) is cited herein as "**A.E.R.**" followed by a reference to the applicable bates number.

the rule that only final judgments are appealable as of right, but instead as a "practical construction" of that rule. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). Under the collateral order doctrine, the reviewing court may treat as "final" for purposes of appellate review an "order that [1] 'conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment.'" *Burlington N. & Santa Fe Rwy. Co. v. Vaughn*, 509 F.3d 1085, 1089-90 (9th Cir. 2007) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)); *see also Will v. Hallock,* 546 U.S. 345, 347 (2006); *Digital Equip. Corp.*, 511 U.S. at 867. The Supreme Court has explained that the collateral order doctrine applies in cases in which "some particular value of a high order was marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual." *Will*, 546 U.S. at 352-53. The collateral order doctrine has been applied to bankruptcy court orders. *Brewer v. N.Y. Dept. of Corr. Servs. (In re Value-Added Commc'ns, Inc.)*, 216 B.R. 772, 775 (N.D. Tex. 1997) (rejecting argument that collateral order doctrine only applies to orders of the district court).

In *Value-Added*, the district court determined that appeal of the bankruptcy court's denial of the motion to dismiss the adversary action on Eleventh Amendment immunity grounds satisfied the collateral order doctrine. *Id.* at 774-75. The court explained that the denial of the motion to dismiss conclusively determined the Eleventh Amendment issue, which was collateral to the merits of the claim, *i.e.*, whether the defendant was immune from suit. *Id*. at 775. Moreover, the court explained that "while the denial of a State's claim of Eleventh Amendment immunity is technically open to review on appeal of a final judgment, requiring a state to litigate to a final judgment would undermine the unique protection afforded the States by the Eleventh Amendment." *Id.* Consequently, the court concluded that the order was "effectively

1    unreviewable on appeal." *Id.*

2          This Court should reach the same result as *Value-Added*.  The Bankruptcy Court, by

3    denying Ambac's Motion to Dismiss, conclusively determined the disputed issue of whether

4    LVMC is an instrumentality of the State of Nevada and, thus, not a "person" eligible to file a

5    chapter 11 case.   This determination involves the important issue of whether LVMC is a

6    municipality, which is a governmental unit expressly excluded from the definition of "person"

7    under 11 U.S.C. § 101(41).  This exclusion of governmental units from the definition of "person"

8    demonstrates Congress's recognition that the Tenth Amendment of the U.S. Constitution limits

9    the federal courts' authority over state instrumentalities, including municipalities.  Accordingly,

10   Congress has authorized municipalities to file for bankruptcy protection only under chapter 9,

11   which requires express authorization from the state.   Thus, the Bankruptcy Court's decision to

12   exercise power over LVMC implicates the Tenth Amendment.   As such, the issue involves a

13   "value of a high order" such that appeal of the decision is appropriate for treatment under the

14   collateral order doctrine. *See Will*, 546 U.S. at 352-53.

15         Moreover, like the Eleventh Amendment issue in *Value-Added*, the question of whether

16   LVMC is a "person" under 11 U.S.C. § 101(41) is collateral to the merits of the underlying

17   action, *i.e.*, the reorganization of LVMC's debts, business and financial affairs.  In deciding that

18   issue, as discussed below, the Bankruptcy Court devised a new legal test that is entirely separate

19   from the considerations regarding how to reorganize (or liquidate) LVMC.  Because the Order

20   resolved a "discrete issue" separate from the merits of the underlying action, the Order constitutes

21   a collateral order.

22         Finally, LVMC has taken the position that the Order will not be reviewable on appeal at

23   the end of the chapter 11 proceeding.[2]  Opposition to Motion for Leave to Appeal at 13-14,

24   Bankruptcy Docket #408 [A.E.R.02094-95].  In fact, according to LVMC, the issue will be moot.

25   _____

26   [2] Ambac has taken the position that the Order will be subject to review at the end of the proceeding and will not be mooted by substantial consummation of a plan of reorganization.

If LVMC is correct, this important issue with constitutional implications will escape any appellate review.  Moreover, even if the constitutional issue raised by Ambac's appeal could be reviewed at the end of the proceeding, allowing the Bankruptcy Court to proceed now and exercise authority over a state instrumentality without the State of Nevada's express authorization as required by chapter 9 would undermine the "unique protection afforded the States" by the Tenth Amendment. *See In re Value-Added*, 216 B.R. at 775.  Indeed, under analogous circumstances involving the Eleventh Amendment, the *Value-Added* court concluded that the bankruptcy court's denial of a motion to dismiss was "effectively unreviewable" for purposes of the collateral order doctrine. *Id.*  For these reasons, the Order meets the three requirements of the collateral order doctrine and involves a "value of high order," *i.e.* the Tenth Amendment.  As such, the Court has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1).

**B.     Ambac's Motion for Leave to Appeal Should Be Granted**[3]

An alternative basis for jurisdiction is this Court's decision to hear the appeal on permissive grounds for the reasons set forth in Ambac's Motion for Leave to Appeal.  Bankruptcy Docket #370 [A.E.R.01977-90].  As noted above, Ambac asserts that the Order addresses a jurisdiction issue that cannot be rendered moot by the confirmation and substantial consummation of LVMC's plan of reorganization, as urged by LVMC.  If Ambac is correct, and its appeal will not be mooted by substantial consummation of the plan, then this Court should grant Ambac's Motion for Leave to Appeal and exercise jurisdiction pursuant to 28 U.S.C. § 158(a)(3) since, as set forth in detail in such Motion, this appeal (1) involves a controlling question of law, (2) for which there is a substantial ground for difference of opinion, and (3) an immediate appeal would materially advance the ultimate termination of the litigation.

**II.     STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW**

Ambac's appeal presents legal issues, which are issues of law, for which the material facts

---

[3]  Ambac has also filed a motion for stay of the Chapter 11 Case pending resolution of this appeal, and a motion requesting that this Court certify the appeal to the Ninth Circuit.

1    are undisputed, thus, the standard of review is *de novo*. *Fireman's Fund Ins. Co. v. Grover (In*

2    *re: The Woodson Co.)*, 813 F.2d 266, 270 (9th Cir. 1987) (noting that the review of the

3    bankruptcy court's conclusions of law is *de novo*). If challenged on appeal, a bankruptcy court's

4    findings of fact are reviewed for clear error. *Id.* However, since Ambac does not challenge the

5    Bankruptcy Court's factual findings in this instance, but rather only the Bankruptcy Court's

6    conclusions of law and the application of the law to the undisputed facts, the Court's review is *de*

7    *novo. Id.* Ambac's appeal presents the following legal issues:

       1.      Whether the Bankruptcy Court erred as a matter of law when it concluded that LVMC qualifies as a "person" under section 101(41) of the Bankruptcy Code that is eligible to be a debtor under chapter 11 pursuant to section 109(d) of the Bankruptcy Code?

       2.      Whether the Bankruptcy Court's determination that LVMC was eligible to be a debtor under chapter 11 of the Bankruptcy Code violated the United States Constitution?

## III.    STATEMENT OF THE CASE

### A.    The Parties.

      LVMC is a nonprofit public benefit corporation organized under Nevada law in 2000 for the purpose of financing, acquiring, constructing and operating a monorail (the "**Monorail**") which travels along a 3.9-mile route near the Las Vegas Strip. Order at 2, n.1 [A.E.R.01881] The acquisition and construction of the Monorail was financed by three series of tax-exempt revenue bonds issued by the Director of the State of Nevada Department of Business and Industry (the "**Director**"): (1) the $451,448,217.30 original principal amount 1st Tier Series 2000 (the "**1st Tier Bonds**"); (2) the $149,200,000 original principal amount 2nd Tier Series 2000 (collectively with the 1st Tier Bonds, the "**Senior Bonds**"); and (3) the $48,500,000 original principal amount 3rd Tier Series 2000 (collectively with the Senior Bonds, the "**Bonds**"). Order at 2-3 [A.E.R.01881-01882]. *See also* Official Statement at 1 [A.E.R.03239]. The Director issued the Senior Bonds pursuant to a Senior Indenture, dated as of September 1, 2000, between Wells

Fargo Bank, as trustee ("**Trustee**"), and the Director.  Order at 3 [A.E.R.01882].  The Director loaned the proceeds of the Bonds to LVMC pursuant to a Financing Agreement, dated as of September 1, 2000, between LVMC and the Director.  *Id.*

Ambac's interest in these proceedings arises under three arrangements related to the 1st Tier Bonds.  First, Ambac Assurance Corporation issued Municipal Bond Insurance Policy Number 17548BE, dated September 20, 2000 (the "**Policy**"), to insure the payment of scheduled amounts of principal and interest on the 1st Tier Bonds.  Declaration of Scott Zuchorski ¶ 12, Bankruptcy Docket #9 [A.E.R.00669].  Second, Ambac Assurance Corporation has guaranteed payments from the Debt Service Reserve Fund for the 1st Tier Bonds in an amount not to exceed $20,991,807.50 under Surety Bond No. SB1080BE (the "**Surety Bond**") it issued to the Trustee. *Id.*  Third, Ambac Assurance Corporation owns $8.5 million in principal amount of 1st Tier Bonds.  *Id.*  As of the date of this brief, Ambac has made payments under its Surety Bond in the aggregate amount of $20,532,771.15 due to LVMC's failure to pay required installments of principal and interest on the 1st Tier Bonds as and when due under the Financing Agreement. Ambac's total exposure under the Policy and Surety Bond is approximately $1.16 billion.  Order at 4, n.5 [A.E.R.01883].

On March 24, 2010, at the request and with the approval of the Office of the Wisconsin Commissioner of Insurance ("**Commissioner**"), Ambac Assurance Corporation established the Segregated Account for certain contracts, including the Surety Bond and the Policy for the 1st Tier Bonds.  The Commissioner then commenced rehabilitation proceedings for the Segregated Account in the Circuit Court for Dane County, Wisconsin.  Ambac continues to service the Surety Bond and the Policy, subject to the oversight of the Commissioner, as the court-appointed Rehabilitator.[4]  The Rehabilitator is a creditor and party in interest in LVMC's bankruptcy case,

---

[4]  The Dane County Court entered an Order for Temporary Injunctive Relief on March 24, 2010.  Section 8 of this Order enjoins Ambac from making payments under its Policy or Surety Bonds without the Commissioner's consent. It is anticipated that following the approval of a plan of rehabilitation, claims under the Policy and Surety Bond will be paid as they arise through a combination of cash and interest-bearing surplus notes.

and has a direct, pecuniary interest in maximizing the amounts to be paid by LVMC to its bondholders because those payments will reduce the amount of the bondholders' claims against the Segregated Account in the Wisconsin rehabilitation proceedings.[5]

**B.      The Undisputed Facts Regarding LVMC and the Bonds.**

LVMC is a nonprofit public benefit corporation organized under the laws of the State of Nevada.  Order at 2, 2 n.1 [A.E.R.01881]; *see also* Transcript of February 17, 2010 Hearing ("**Transcript**") at 46:23-47:6 [A.E.R.01580-1581].  LVMC has never issued stock.  Transcript at 47:18-21 [A.E.R.01581].  LVMC claims exemption from Federal income taxation under section 501(c)(4) of the Internal Revenue Code of 1986 (as amended, the "**IRC**"), 26 U.S.C. § 501(c)(4). Order at 2, 2 n.1 [A.E.R.01881]; *see also* Transcript at 47:7-11 [A.E.R.01581].  LVMC does not pay Nevada's modified business tax or any sales tax, as it is exempt from state sales and use taxation under section 372.3261 of the Nevada Revised Statutes. Order at 2, 2 n.1 [A.E.R.01881]; *see also* Transcript at 47:12-15 [A.E.R.01581].  No part of LVMC's net earnings may inure to the benefit of anyone other than the Governor.  Transcript at 47:22-2 [A.E.R.01581].  Moreover, upon LVMC's dissolution, all of its net assets remaining must be distributed to the Governor or to a designated agency of the State of Nevada.   Articles of Incorporation, Art. III [A.E.R.02773].

The Bonds are structured as tax-exempt governmental revenue bonds under section 103(a) of the IRC.  The Bonds were issued as revenue bonds to ensure that they would be nonrecourse as to the State of Nevada, and payable solely from revenues generated by the Monorail.  Order at 3 [A.E.R.01882].  The Bonds were issued as governmental bonds, rather than "qualified private activity bonds" (also known as "industrial development bonds" or "industrial revenue bonds"), to ensure that the principal amount of the Bonds would not be allocated against the State's private activity volume cap.[6]  Certificate of the Director of the State of Nevada Department of Business

---

[5]  The rehabilitation proceeding is a remedial proceeding designed to equitably promote the best interests of the large number of policyholders who are looking to the Rehabilitator for protection on their claims against the Segregated Account.

[6]  The Bonds do not constitute industrial development bonds or other qualified private activity bonds under Federal law, but they were issued as industrial development revenue bonds under chapter 349 of the Nevada Revised

and Industry at A.E.R.02658 (the "**Director's Certificate**").  In order to structure the Bonds as governmental bonds, LVMC had to qualify as an "instrumentality" of the State under Federal tax law, and to do so, LVMC was required to cede significant control rights to the Governor.  Order at 32 [A.E.R.01911].

The Governor's control rights are embedded in LVMC's Amended and Restated Bylaws (the "**Bylaws**"), and they are further acknowledged and agreed by LVMC under its Tax Certificate and Agreement, dated September 20, 2000 (the "**Tax Agreement**"), with the Director. [A.E.R.02621, *et seq.*]  Section 1.8 of the Tax Agreement expressly states that "[t]he Borrower [LVMC] is an *instrumentality of the State of Nevada, controlled by the Governor of the State of Nevada …*"  [A.E.R.02629-02630] (Emphasis added.)  The Bylaws provide significant control rights to the Governor with respect to LVMC's governance, material financial affairs and aspects of its operations.  For instance, all appointments to LVMC's Board of Directors must be approved by the Governor.  Bylaws §§ 6.02 and 6.04, Ambac Hearing Exhibit 4 [A.E.R.02776-02777]; *see also* Transcript at 36:15-37:2 [A.E.R.01570], 37:11-16 [A.E.R.01571].  The Board must notify the Governor of its recommendation to reappoint or replace a director whose term is expiring, and if the Governor disapproves of the Board's first two nominees, then the Governor may appoint the successor director without Board input or approval.  Bylaws § 6.04 [A.E.R.02777].  Notably, the Governor may refuse to appoint or reappoint a director, for any reason or no reason at all, at his sole discretion.   The Governor may remove any director from LVMC's Board for cause, but no director may be removed by the Board without the Governor's approval..  Bylaws § 6.03 [A.E.R.02776-02777]; *see also* Transcript at 47:1-9 [A.E.R.01581].  If the Governor disapproves of the Board's recommendation for removal, the director shall not be removed from the Board. Bylaws § 6.03 [A.E.R.02776-02777].

LVMC also must obtain the Governor's approval of its annual budgets, financial reports, any material alterations to its annual budget or financial reports, any major expenditures for

Statutes.

enhancements or repairs of the Monorail, and any proposed changes to the rate schedule.[7] Bylaws § 6.12 [A.E.R.02778]. If the Governor disapproves LVMC's budget, the Board must prepare another one for the Governor's approval. Transcript at 49:9-15 [A.E.R.01583]. Similarly, if the Governor disapproves of LVMC's financial reports, the Board must change them until the Governor's approval is obtained. Transcript at 50:20-23 [A.E.R.01584]. The Governor approved LVMC's initial rate schedule, and LVMC must notify the Governor of and obtain the Governor's approval for any material change to the rate schedule. Transcript at 49:22-50:5 [A.E.R.01583-01584]. LVMC must also notify the Governor of any material alteration to the budget or a financial statement. Transcript at 50:24-51:6 [A.E.R.01584]. The Governor has the right to inspect and audit LVMC's books, records, and documents. Bylaws § 8.03 [A.E.R.02781]; *see also* Transcript at 51:14-16 [A.E.R.01585]. LVMC's Articles of Incorporation and Bylaws may not be amended or repealed without the Governor's approval. Articles of Incorporation Art. IV [A.E.R.02774][8]; Bylaws Art. X [A.E.R.02782]; *see also* Transcript 51:17-22 [A.E.R.01585].

LVMC has telephone, email and written communication with the Director regarding LVMC's affairs. Transcript 42:17-23 [A.E.R.01576]. LVMC provides the Director with copies of the packages of materials for the Board meeting in advance of each meeting of the Board. Transcript 43:4-21 [A.E.R.01577]. A representative of the Director is invited to attend all of the meetings of LVMC's Board. Transcript 43:22-44:2 [A.E.R.01577]. Notably, a representative of the Governor or the Director attended, in person, no fewer than 50 meetings of the LVMC Board of Directors since 2004.[9] Ambac Hearing Exhibit 14 [A.E.R.02985, *et seq.*].

---

[7] The Governor cannot disapprove of rate changes, however, if such changes are mandated under the Rate Covenant (as defined in the Bylaws). Bylaws § 6.12 [A.E.R.02778].

[8] A copy of the Articles of Incorporation is part of the record at Ambac Hearing Exhibit 3 [A.E.R.02770, *et seq.*].

[9] These representatives were not lower-level bureaucrats. Rather, LVMC's Board meetings were attended by either (a) the Governor's Chief of Staff, (b) the Governor's Deputy Chief of Staff, (c) the Director of the Department of Business and Industry, or (d) the Chief Financial Officer of the Department of Business and Industry Housing Division. Summary of Board Meetings at A.E.R.02985-86.

1     LVMC must make its annual budget and any material modifications thereto available to

2     the public.   Tax Agreement § 3.3.5 [A.E.R.02632].   Moreover, any meeting of the Board of

3     Directors at which the annual budget is adopted must be noticed as a public meeting, open to

4     public attendance, and public comment must be permitted.   *Id.*; Transcript at 48:12-15

5     [A.E.R.01582].   The public may attend the Board meeting adopting the annual budget and may

6     comment on the budget once it has been delivered to the Governor for approval.   Transcript at

7     48:16-49:8 [A.E.R.01582-01583].   Minutes of all meetings of the Board of Directors must be

8     available for public review (but proprietary or confidential information may be deleted.)   *Id.*

9     **C.      Bankruptcy Court Order Denying Ambac's Motion to Dismiss.**

10          On January 13, 2010, LVMC filed its chapter 11 petition, and Ambac filed its Motion to

11    Dismiss on the same day.   Order at 4 [A.E.R.01883].   Ambac argued in its Motion to Dismiss, as

12    it argues in this appeal, that LVMC is an "instrumentality of a State" under the broad definition of

13    "municipality" set forth in section 101(40) of the Bankruptcy Code, and therefore LVMC is not

14    eligible to be a chapter 11 debtor under section 109(d) of the Bankruptcy Code.   The Bankruptcy

15    Court held a hearing on Ambac's Motion to Dismiss on February 17, 2010, and entered the Order

16    denying Ambac's Motion to Dismiss on April 26, 2010.   *Id.*

17          In its Order, the Bankruptcy Court analyzed certain portions of the legislative history of

18    chapter 9 of the Bankruptcy Code, and discussed various caselaw interpretations of the

19    Bankruptcy Code's definition of "municipality."    *Id.* at 8-24  [A.E.R.01887-01903].    The

20    Bankruptcy Court then purported to synthesize the components of an instrumentality under the

21    Bankruptcy Code.  *Id.* at 24-32 [A.E.R.01903-01911].   As part of this synthesis, the Bankruptcy

22    Court created the following instrumentality test:

23                  If there is State control coupled with public function, then the nature and
              extent of that control determine whether the entity is an instrumentality. In
24            this regard, the type of control is critical.   *If the control retained or*
              *exercised is necessary or designed to allow the State to manage its*
25            *finances or its fisc – the traditional concerns of Chapter 9 – then the*
              *entity is an instrumentality.  If the control, however, is more akin to*

> *oversight or regulation, then the entity is not an instrumentality.*   See
> *Ellicott School Bldg. Authority*, 150 B.R. at 263; *Greene County Hospital*,
> 59 B.R. at 389.

*Id.* at 25 [A.E.R.01904] (emphasis added.)

The Bankruptcy Court acknowledged that the Governor's level of control over LVMC is "fairly expansive," "significant" and "expansive."  *Id.* at 4 n.4, 21 and 39 [A.E.R.01883, 01900 and 01918].  The Bankruptcy Court also noted, however, that LVMC is responsible for its day-to-day operations, it faces competition from the Regional Transportation Commission, it requires business licenses to operate, and the State of Nevada is not responsible for paying the Bonds.  *Id.* at 36-37 [A.E.R.01915-01916].  Based on these findings, the Bankruptcy Court then concluded as follows:

> This low level of State control over matters going to essential state sovereignty and essential state functions indicates that LVMC is not a municipality as contemplated by the Bankruptcy Code.
> . . .
>
> *It is beyond doubt that Nevada's involvement in LVMC is significant, and some might say too intrusive for LVMC to be purely private.  But those intrusions are relatively unique, and not designed to protect public finances or the public fisc.*

*Id.* at 37 [A.E.R.01916] (emphasis added.)

## IV.    LEGAL ARGUMENT

The Bankruptcy Court erred as a matter of law when it concluded that (a) LVMC is not an "instrumentality of a State" under the definition of "municipality" in section 101(40) of the Bankruptcy Code, and (b) LVMC is a "person" under section 101(41) of the Bankruptcy Code that is eligible to be a chapter 11 debtor under section 109(d) of the Bankruptcy Code.  In its Order, the Bankruptcy Court created a new test for analyzing whether LVMC was an "instrumentality of a State." In creating and applying this test, the Bankruptcy Court misinterpreted and misapplied the legislative history of chapter 9 of the Bankruptcy Code, and

1    ignored the applicable body of caselaw which holds that an entity is an "instrumentality of a

2    State" when it is subject to "control" by the State.   For the reasons set forth below, this Court

3    should (x) determine that LVMC is an "instrumentality of the State" under the definition of

4    "municipality" in the Bankruptcy Code, (y) rule that LVMC is ineligible to be a chapter 11

5    debtor, and (z) dismiss LVMC's Chapter 11 Case for lack of jurisdiction.[10]

6         A.    **The Bankruptcy Code Prohibits a "Municipality" from Being a Chapter 11
               Debtor, and the Tenth Amendment Prohibits a Bankruptcy Court from
7              Exercising Jurisdiction over an Unauthorized Municipal Bankruptcy.**

8         The instant appeal challenges the statutory eligibility of LVMC to file the Chapter 11

9    Case and the Bankruptcy Court's constitutional jurisdiction to oversee the Chapter 11 Case.   The

10   statutory criteria to be a debtor in a bankruptcy case are set forth in Section 109 of the Bankruptcy

11   Code.   In particular, Section 109(c) governs eligibility to be a debtor in a chapter 9 adjustment of

12   debts, and Section 109(d) governs eligibility to be a debtor in a chapter 11 reorganization.

13   Eligibility to file a chapter 11 reorganization is restricted, with few exceptions (not applicable to

14   this appeal), to a "person," and eligibility to file under chapter 9 is restricted to a "municipality."

15   11 U.S.C. §§ 109(c) & (d).   The definition of "person" under the Bankruptcy Code includes an

16   "individual, partnership, and corporation," and the term "municipality" is defined as a "political

17   subdivision or public agency or instrumentality of a State."   11 U.S.C. §§ 101(40), 101(41).

18   Notably, these definitions are mutually exclusive.   The definition of "person" expressly excludes

19   a "government unit," and the definition of "government unit" expressly includes a "municipality."

20   *See* 11 U.S.C. §§ 101(27) ("government unit"), 101(40) & 101(41). As a result, the Bankruptcy

21   Code prohibits "municipalities" from reorganizing under chapter 11, and "persons" from

22   adjusting their debts under chapter 9.

23

24

---

25   [10]   The Bankruptcy Court has acknowledged that any chapter 11 restructuring will have to be unwound if this Court
     determines that LVMC is a "municipality" under the Bankruptcy Code.   *See* Denial of Stay Pending Appeal at 6
26   [A.E.R.02071].

In addition, the Tenth Amendment of the U.S. Constitution precludes bankruptcy courts from exercising jurisdiction when a municipal bankruptcy is filed without state authorization.[11] *See* U.S. CONST. amend. X; S. REP. NO. 989, 95th Cong., 2d Sess. 110 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5896-97 ("[a]bsent … a requirement for affirmative action by the state, a serious constitutional question [regarding municipal bankruptcies] would be raised in connection with the 10th amendment."). Congress alone may regulate bankruptcies, but the ability to create and empower municipalities is within the sole province of the states. *See* H.R. REP. NO. 595, 95th Cong., 1st Sess 262-264 (1977) ("This bill [relating to the 1978 recodification of the Bankruptcy Code] takes ... care to insure that there is no interference in the political or governmental functions ... of the State in its power to control its municipalities."). Thus, a bankruptcy court infringes upon state sovereignty under the Tenth Amendment if it oversees an unauthorized municipal bankruptcy filing. *See In re City of Bridgeport*, 128 B.R. 688, 695 (Bankr. D. Conn. 1991). Consequently, a municipality that desires bankruptcy relief cannot proceed under any chapter of the Bankruptcy Code except chapter 9, and the municipality may file under chapter 9 only if it has obtained the express authorization of the state and satisfied the other debtor-eligibility criteria under section 109(c).[12]

**B.     LVMC Is a "Municipality" (*i.e.*, "Instrumentality of a State") Under the Bankruptcy Code Pursuant to Congress' Intent, Caselaw and Logic.**

Section 101(40) of the Bankruptcy Code defines "municipality" to include an "instrumentality of a State," but the Bankruptcy Code does not define "instrumentality of a

---

[11]   The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

[12]   Upon dismissal of the Chapter 11 Case, LVMC may file under chapter 9 if it obtains specific authorization from the State of Nevada and it satisfies the other criteria under Section 109(c). At this time, the State of Nevada has decided in its sovereign discretion not to authorize its municipalities to declare bankruptcy. The absence of such State authorization has no bearing whatsoever on whether LVMC is properly classified as a municipality under the Bankruptcy Code. In absence of state authorization, typically a financially troubled municipality's debts are restructured under state law and state court procedures, such as receivership. Under either chapter 9 or a state law on debt composition, the applicable substantive law on how these debts may be restructured differs materially than under chapter 11. As a result, the Bankruptcy Court's decision to leave this case in chapter 11 will have a substantive impact on the rights of the parties.

State," and the plain meaning of the term is ambiguous.  Thus, it is necessary to review the legislative history of chapter 9 and applicable caselaw to determine the meaning of "instrumentality of a State."

As discussed below, Congress expressly intended the definition of "municipality" to be broadly construed in order to avoid Tenth Amendment entanglements, and the applicable caselaw holds that an entity is an instrumentality if it is "controlled" by the state.  However, none of the caselaw, legislative history, statutory framework or logic supports the Bankruptcy Court's decision to create an instrumentality test that examines the *purpose* of the state's control.  The Bankruptcy Court, therefore, misinterpreted and misapplied the legislative history of chapter 9 and applicable case law.  When congressional and court directives are properly construed and applied to the undisputed facts of this case, it is clear that LVMC is an instrumentality of the State of Nevada under the Bankruptcy Code.  As such, LVMC is ineligible to be a debtor under chapter 11, and the Bankruptcy Court lacks jurisdiction to administer the Chapter 11 Case.

> 1.  Congress Intended the Definition of "Municipality" Under the Bankruptcy Code to Be Expansive.

The existing definition of "municipality" under section 101(40) of the Bankruptcy Code was enacted in substantive part under the 1976 amendments to chapter 9 of the 1898 Bankruptcy Act.[13]  *See* Act of April 8, 1976, Pub. L. No. 94-260, 90 Stat. 315 (1976) (the "**1976 Amendments**").  Prior to the 1976 Amendments, eligibility to commence a municipal bankruptcy under chapter 9 was confined to an extensive list of agencies and instrumentalities which paid their debts with property taxes, assessments or revenues from income-producing property.  This list was first codified in the Municipal Bankruptcy Act of 1937, and it was amended in 1946.  *See* Act of August 17, 1937, Pub. L. No. 302, 50 Stat. 653 (1937) (the "**1937 Act**"); Act of July 1,

---

[13]  In particular, the 1976 Amendments amended section 81 of the Bankruptcy Act to read:  "(8) 'Petitioner' means agency, instrumentality, or subdivision which has filed a petition under this chapter."  Bankruptcy Act § 81(8), 11 U.S.C. § 401(8) (as amended in 1976).  Nonsubstantive amendments to this definition by the 1978 recodification resulted in the existing definition of "municipality" under Section 101(40) of the Bankruptcy Code.  *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 313 (1977).

1946, Pub. L. No. 481, 60 Stat. 409 (1946) (the "**1946 Amendments**").   Congress passed the

1976 Amendments because it believed that the municipal bankruptcy procedures had become

"hopelessly archaic and unworkable."  H.R. REP. NO. 94-686, 94th Cong., 1st Sess. 4 (1976).  The

1976 Amendments replaced the lengthy list of agencies and instrumentalities under the 1937 Act,

as amended by the 1946 Amendments, with a streamlined definition of "municipality" which is

substantively identical to the definition now contained in section 101(40).

Congress's intention in establishing the definition of "municipality" is expressed in the

House Report which accompanied passage of the 1976 Amendments:

> The entity that files [under Chapter 9] must be a political subdivision or
> public agency or public instrumentality of a State. This is not meant to be
> limiting language, but rather is meant to be a description of the general
> categories that cover all of the various entities now listed in Section 81 of
> the current law. The bill also omits any limiting reference to the manner by
> which the indebtedness of the entity is payable.  *The intention of these two*
> *changes is to broaden the applicability of Chapter IX[14] as much as possible.*

H.R. REP. NO. 94-686 at 19-20 (emphasis added).  The foregoing intent of Congress to broaden

the definition of municipality has been cited widely by courts and legal commentators.  *See*

*Hamilton Creek Metro. Dist. v. Bondholders Colo. Bondshares (In re Hamilton Creek Metro.*

*Dist.)*, 143 F.3d 1381, 1384 (10th Cir. 1998); *New York City Off-Track Betting Corp.*, 2010

Bankr. LEXIS 791 at *16; *In re Pierce County Housing Auth.*, 414 B.R. 702, 710 (Bankr. W.D.

Wash. 2009); *In re Valley Health Sys.*, 383 B.R. 156, 163 (Bankr. C.D. Cal. 2009); *In re County*

*of Orange*, 183 B.R. 594, 601 (Bankr. C.D. Cal. 1995); *In re Sullivan County Reg'l Refuse*

*Disposal Dist.*, 165 B.R. 60, 73 (Bankr. D.N.H. 1994); *City of Bridgeport*, 128 B.R. at 695; *In re*

*Pleasant View Util. Dist. of Cheatham County*, 24 B.R. 632, 638 (Bankr. M.D. Tenn. 1982); *see*

*also* 2 COLLIER ON BANKRUPTCY ¶101.40 (15th ed.) (courts should not "fail[] to give effect to

Congress' intention to broaden the definition of 'municipality.'"); 6 COLLIER ON BANKRUPTCY

¶900.02[2][a][iii] ("Congress intended the definition of municipality to be expansive …").

---

[14]  Chapter IX of the Bankruptcy Act of 1898 was the predecessor of modern-day chapter 9 of the Bankruptcy Code
of 1978.

1     The Bankruptcy Court Order traces the legislative history of chapter 9 from the time of its

2    enactment under the 1937 Act through the amendments of 1994 (the "**1994 Amendments**").

3    [A.E.R.01887-01903].  The Bankruptcy Court's interpretation of the legislative history, however,

4    is erroneous in a number of respects.  These erroneous interpretations of legislative history are

5    identified below.

6     The 1946 Amendments added the following category to the list of agencies and

7    instrumentalities deemed eligible to file under chapter 9 of the 1937 Act:  "(6) incorporated

8    authorities, commissions, or similar public agencies organized for the purpose of constructing,

9    maintaining, and operating revenue-producing enterprises."  Act of July 1, 1946, Pub. L. No. 481,

10    60 Stat. 409.  The purpose of this amendment was to accommodate the rapid growth of revenue

11    bond financings and the related emergence of public finance authorities.  *See* H.R. REP. NO. 2246,

12    79th Cong., 2d Sess. 2-3 (1946).  The House Report accompanying the 1946 Amendments also

13    includes the following statements:

14           [The 1946 Amendments] amends the existing statute so as to make it applicable to any type of revenue bond issued by a city, town, county, and

15           so forth, and also to make the act applicable to "authorities."  The extension of the act along these lines is singularly appropriate because the

16           revenue bonds issued by municipalities or authorities are for the purpose of

17           financing revenue-producing enterprises rather than governmental functions.

18

19   *Id.*

20     The Bankruptcy Court interpreted the 1946 Amendments and legislative history narrowly

21    as extending chapter 9 eligibility only to bond issuers.  Order at 11 [A.E.R.01890].  From this

22    narrow construction, the Bankruptcy Court drew the following conclusion:

23           This structure and purpose created a negative inference that entities such as LVMC were also to be considered municipalities; otherwise, the legislation

24           could have been easily extended to the entities to whom the public financing was lent, or from whom project revenues were to be received.

25

26   *Id.*

In other words, the Bankruptcy Court inferred that, by omitting reference in the legislative history to the entities which received loans from the bond issuers, Congress intended to exclude conduit borrowers like LVMC from eligibility for chapter 9 relief.  Contrary to this interpretation, however, no such inference can be drawn from the 1946 Amendments or legislative history for the simple reason that conduit bond financings were virtually non-existent in 1946.  *See* Note, *Bedtime for [Industrial Development] Bonds?:  Municipal Bond Tax Legislation of the First Reagan Administration*, 48 LAW & CONTEMP. PROBS. 213, 219 (1985) (recognizing that the first industrial revenue bonds were issued in 1936 and "[f]or a number of years thereafter, only a very limited number of these bonds were issued.")

Congress passed the 1976 Amendments because chapter 9 by that time had become "hopelessly archaic and unworkable," and it codified the definition of "municipality" under the 1976 Amendments in order to "broaden the applicability of Chapter 9 as much as possible."  H.R. REP. NO. 94-686, 94th Cong., 1st Sess. 4, 19-20.  Enactment of the definition of "municipality" under the 1976 Amendments represents the most important legislative development relating to the central issue in this appeal, *i.e.*, whether LVMC is a "municipality" under the Bankruptcy Code.  The leading authority on bankruptcy law observes that the definition of municipality under section 101(40) is "strikingly dissimilar" to the long list of agencies and instrumentalities under section 81 of the 1937 Act (as amended by the 1946 Amendments), and, like many courts, it emphasizes that any interpretation of section 101(40) must give effect to Congress' intention to broaden the definition of "municipality."   COLLIER ON BANKRUPTCY, ¶900.02[2][a].   It is surprising, then, that the Bankruptcy Court ascribed little significance in its lengthy Order to the enactment of this definition of municipality or the underlying Congressional intent.  In fact, the Bankruptcy Court dismissively referred to the creation of the definition of municipality as being "not completely without effect," and it mentioned Congress' intention for a broad construction of the definition only one time.  Order at 23-24 [A.E.R.01902-03].

In addition to underemphasizing the express intent of Congress in creating the definition of municipality, the Bankruptcy Court misconstrued the legislative history of chapter 9 as it relates to "industrial development bonds" which finance the projects of "privately owned companies."  For example, the Bankruptcy Court quoted the following two passages from the legislative history of the 1976 Amendments and the 1978 recodification, respectively, as support for its erroneous conclusion that Congress did not intend to include entities like LVMC which borrow the proceeds of industrial development bonds "of the type involved in this case" as municipalities under the Bankruptcy Code:

> Municipalities are authorized … to issue tax-exempt industrial development bonds to provide for the financing of certain projects for *privately owned companies* …  The municipality merely acts as the vehicle to enable the bonds to be issued on a tax-exempt basis.  It is not the intent of the Committee of Conference to include these industrial development bonds in a chapter IX case.

Order at 12 (quoting H.R. REP. NO. 94-938 at 15) (emphasis added by Bankruptcy Court.)

> The [industrial development] bonds are sold on the basis of the credit of the company on whose behalf they are issued, . . .   The municipality merely acts as the vehicle to enable the bonds to be issued on a tax-exempt basis. Claims that arise by virtue of these bonds are not among the claims defined by this paragraph *and amounts owed by private companies to the holders industrial development revenue bonds are not to be included among the assets of the municipality* that would be affected by the plan.

Order at 14 (quoting 124 CONG. REC. 32,393 (1978) (remarks of Rep. Edwards) (emphasis added by Bankruptcy Court).  The Bankruptcy Court errs in ascribing any meaning to these passages because the Bonds involved in the Chapter 11 Case are not industrial development bonds.

Historically, the Internal Revenue Code permitted the issuance of municipal bonds on a tax-exempt basis even if the proceeds of the bonds were to be used completely for private purposes. National Association of Bond Lawyers, FUNDAMENTALS OF MUNICIPAL BOND LAW 102 (2003).  Between 1968 and 1986, the Internal Revenue Code of 1954 (the "**1954 IRC**") imposed restrictions on the amount of private use to which the proceeds of such bonds could be

applied.  *Id.*  More importantly, during this period of time the 1954 IRC recognized two types of tax-exempt industrial development bonds: (a) "exempt facility bonds" under 26 U.S.C. §§ 103 (b)(4) and (5); and (b) "small issue industrial development bonds" under 26 U.S.C. § 103 (b)(6). *See Bedtime for [Industrial Development] Bonds?*, 48 LAW & CONTEMP. PROBS. at 221. Congress passed the Tax Reform Act of 1986 (the "**TRA**") in order to limit the volume of industrial revenue bonds that were being issued to finance the non-governmental activities of private companies.  *See* FUNDAMENTALS OF MUNICIPAL BOND LAW at 2-4 and 102.

The TRA created two broad, mutually-exclusive categories into which all tax-exempt municipal bonds are classified:  (a) "governmental bonds" issued to finance public activities and purposes; and (b) "qualified private activity bonds" issued to finance certain private activities which are otherwise deemed to qualify for exempt financing.  26 U.S.C. §§ 103, 141-150; *see* FUNDAMENTALS OF MUNICIPAL BOND LAW at 2-4 and 102-104. As discussed in Sections III.B. and IV.C. herein, the Bonds at issue in this appeal are governmental bonds.  Alternatively, the industrial development bonds that existed under 1954 IRC at the time of the 1976 Amendments are now known under the 1986 IRC as qualified private activity bonds.  26 U.S.C. §§ 142 (exempt facility bonds) and 144(a) (qualified small issue bonds).  Thus, the Bonds involved in this appeal are materially different than the industrial development bonds referenced in the quoted passages from the legislative histories of the 1976 Amendments and 1978 recodification, and LVMC is a materially different entity than the "privately owned companies" that received tax-exempt financing from IDB issuers as described in the quoted legislative histories. The legislative histories of the 1976 Amendments and 1978 recodification, therefore, provide no support for the Bankruptcy Court's conclusion that Congress intended to exclude entities like LVMC from the definition of municipality under the Bankruptcy Code.

Finally, the Bankruptcy Court asserted that the 1994 Amendments are "relevant" to the present appeal because they "indicate a narrowing of eligibility."  Order at 15 [A.E.R.01894]. The 1994 Amendments did not change the definition of "municipality" under section 101(40) of

the Bankruptcy Code; rather, the Amendments revised section 109(c)(2) of the Bankruptcy Code to provide that chapter 9 filings must be "specifically authorized" by the state in which the municipality is located.  Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 402 (1994).  Because this appeal concerns LVMC's proper classification as a municipality under section 101(40), not the State of Nevada's right to authorize chapter 9 filings under section 109(c)(2), the 1994 Amendments are irrelevant.  Nothing in the legislative history of the 1994 Amendments expressly or implicitly suggests that the revision of the state authorization requirement had any impact on the definition of municipality.  Congress expressly intended to broaden the definition of municipality as much as possible when it passed the 1976 Amendments, and the Bankruptcy Court misreads and misapplies Congress' intent when it proclaims that the revisions to the state authorization requirement under the 1994 Amendments provide support for its narrow construction of "municipality" under the Order.

The Bankruptcy Court misinterpreted significant aspects of the legislative history of chapter 9.  Consequently, the Bankruptcy Court erred to the extent it relied upon these erroneous interpretations of legislative history in formulating and applying its instrumentality test.

       2.    <u>Pursuant to Applicable Caselaw, an Entity That Is Controlled by the State Is an "Instrumentality of a State" Under the Broad Definition of "Municipality" in the Bankruptcy Code.</u>

Substantially all courts to rule on the issue have determined that a putative debtor which lacks traditional governmental powers (*e.g.*, taxing power, eminent domain power, etc.) is nevertheless a "municipality" if such entity is controlled by the state.  *See In re Greene County Hosp.*, 59 B.R. 388, 389 (S.D. Miss. 1986) (adopting the control test announced in *York County Natural Gas Authority*); *Ex parte York County Natural Gas Auth.*, 238 F. Supp. 964, 976 (W.D.S.C. 1965) (holding that "[t]he legal test between a private or public authority or agency is whether the authority or agency is subject to control by public authority, state or municipal."); *County of Orange*, 183 B.R. at 600-603 (acknowledging adoption of the control test in the

*Westport Transit* and *Greene County Hospital* decisions); *In re Westport Transit Auth.*, 165 B.R. 93, 95–96 (Bankr. D. Conn. 1994) (adopting the control test announced in *York County Natural Gas Authority*); *In re Ellicott School Building Auth.*, 150 B.R. 261, 264 (Bankr. D. Colo. 1992) (same); *see also* 6 COLLIER ON BANKRUPTCY ¶900.02[2][a][iii] ("[T]he political subdivision, public agency or instrumentality must be subject to control by the state or municipal authority.").

One of the first reported cases to employ the control test in the context of bankruptcy eligibility is *York County Natural Gas Authority*, 238 F. Supp. 964. The York County Natural Gas Authority was created by the General Assembly of South Carolina to acquire, construct and operate natural gas distribution systems within a geographic service area. *Id.* at 966. The Authority generated sufficient revenue to fund its ongoing operations, but it lacked the funds necessary to make improvements to its facilities or to fund debt service on its revenue bond obligations. *Id.* at 969. It commenced a chapter 9 case and sought confirmation of a plan of composition for its outstanding indebtedness, but a bondholder objected to plan confirmation and sought approval of an alternative plan under which a separate company, Carolina Pipeline Company, would gain control of the Authority. *Id.* at 969-76. In ruling on the bondholder's objection and alternative plan, the district court noted that a chapter 9 plan for a revenue-producing enterprise could be proposed only by a "public agency" under Section 81 of the 1937 Act. *Id.* at 976. To determine whether the Authority or the Carolina Pipeline Company constituted a public agency, the district court adopted the control test:

> The legal test between a private or public authority or agency is whether the authority or agency is subject to control by public authority, state or municipal.

*Id.* In applying the control test to the facts of the case, the *York County* district court held that (a) the Authority was a public agency under the control test because its directors were both appointed by a state public authority and subject to its control. *Id.* at 976 n.11. The district court determined that the Carolina Pipeline Company was not a public agency because it had no indicia of

governmental control.  *Id.* at 976.

In the next applicable case, *Greene County Hospital*, the appellant argued that the bankruptcy court lacked jurisdiction over a hospital's chapter 9 case because the debtor was not a municipality under the Bankruptcy Code.  59 B.R. at 388.  Applicable state law established a bifurcated governance structure under which the hospital's board of trustees were responsible for day-to-day operations and the county's board of supervisors retained the power to acquire, convey and lease the hospital's real or personal property.  *Id.* at 389-90.  The district court adopted the control test in *York County Natural Gas Authority* to determine whether the hospital was a municipality for chapter 9 purposes.  *Id.* at 389.  The district court then held that, because the hospital was subject to control by a public authority (i.e., the county board of supervisors), the hospital debtor was a municipality under Bankruptcy Code.  *Id.* at 390.

The bankruptcy court in *Ellicott School District Building Authority* followed the decisions in *Greene County Hospital* and *York County Natural Gas Authority* and used the control test to determine whether the putative debtor was a municipality under the Bankruptcy Code.  150 B.R. 261.  Unlike the decisions in *Greene County Hospital* and *York County Natural Gas Authority*, however, the bankruptcy court in *Ellicott* determined that the putative debtor was not a "municipality" due to the complete absence of governmental control:

> No governmental entity exercises any right of control over the Ellicott School Building Authority.  Neither Colorado statutes nor the articles of incorporation accord any governmental entity the ability to control it.  The Authority's own disclosure statement indicates that its articles of incorporation provide that the Authority's directors must be residents of the School District, but they may not be elected officials or employees of the School District.

*Id.* at 264.

In *County of Orange*, yet another "control test" case, the central issue was whether a commingled bond investment pool (*i.e.*, the "Orange County Investment Pool" or "OCIP") was eligible to be a co-debtor in the chapter 9 proceeding filed by Orange County, California.  183

B.R. 594.  The bankruptcy court noted in its decision that Congress intended to broaden the definition of "municipality" as much as possible, and that the control test had been applied by other courts to determine whether a putative debtor was a "municipality" under the Bankruptcy Code.  *Id.* at 601 & 602 n.19.  However, the bankruptcy court ultimately held, under the unique facts of that case, that OCIP was not a municipality because it did not resemble any of the agencies or instrumentalities under Section 81 of the 1937 Act, as amended by the 1946 Amendments, and because it was controlled by Orange County rather than the State of California.  *Id.* at 602-603.

The *County of Orange* decision is subject to strong criticism by the leading authority on bankruptcy law, COLLIER ON BANKRUPTCY:

> The suggestion that the three categories, "political subdivision," "public agency" and "instrumentality of a State," should be defined exclusively by the categories of agencies and instrumentalities set forth in section 81 of the 1937 Act is misplaced because *the Bankruptcy Code definition is strikingly dissimilar to the language of section 81 of the 1937 Act, and such interpretation would fail to give effect to Congress' intention to broaden the definition of "municipality."*
>
> . . . .
>
> *Congress intended the definition of municipality to be expansive*, and the lesser (instrumentality of a municipality) is included within the greater (instrumentality of a state).
>
> . . . .
>
> There can be no dispute that California's control over the County of Orange is no less pervasive when applied to the Orange County Investment Pool.  *The bankruptcy court erred when it concluded that the Orange County Investment Pool was not an instrumentality of the State.*

¶900.02[2][a] (emphasis added.)

A proper synthesis of the decisions in *York County Natural Gas Authority, Greene County Hospital, Ellicott School District Building Authority, County of Orange*, and other applicable caselaw leads to the following guiding principles relating to the definition of "municipality" under section 101(40) of the Bankruptcy Code:

- Courts must construe the definition of "municipality" broadly in accordance with Congress's intent in revising the definition under the 1976 Amendments.

- Courts must not construe the definition of "municipality" based on the categories of agencies and instrumentalities under Section 81 of the 1937 Act because the language of Section 81 is "strikingly dissimilar" to the definition under Section 101(40) of the Bankruptcy Code.

- The "control test" applies when determining whether an entity which lacks traditional governmental powers is nevertheless a "municipality" under the Bankruptcy Code.

- The boundaries of the control test have not been defined with precision, but:

  o the power of a governmental body to appoint an entity's governing board and control the board has been deemed sufficient to classify that entity as a municipality under the Bankruptcy Code, *York County Natural Gas Auth.*, 238 F. Supp. at 976 n.11;

  o the power of a governmental body to acquire, convey or lease an entity's property has been deemed sufficient to classify that entity as a municipality under the Bankruptcy Code, *Greene County Hospital*, 59 B.R. at 390;

  o an entity's power to control its own operations does not preclude classification of the entity as a municipality under the Bankruptcy Code if a governmental body controls strategic aspects of the entity's organization or properties, *see Greene County Hospital*, 59 B.R. at 390; and

  o the complete absence of governmental control over an entity has been deemed insufficient to classify the entity as a "municipality" under the Bankruptcy Code, *Ellicott School Building Authority*, 150 B.R. at 264.

Notably absent from this listing of principles is any indication that the purpose behind the control exercised by the government has any relevance to the analysis. Nor does logic dictate that the purpose should be relevant: it is not the province of the Federal government to inquire why the sovereign state's instrumentalities are so organized, only to note that they are and apply the constitutional consequences of that status.

3.    The Bankruptcy Court Misconstrued Applicable Caselaw, and Applied Its Instrumentality Test Without Legal Support.

The Bankruptcy Court did not apply the control test under applicable caselaw when it determined that LVMC was not a municipality under the Bankruptcy Code.  Rather, it chose to create an instrumentality test under which a state's powers of control over an entity must be "necessary or designed to allow the State to manage its finances or its fisc."  Order at 25 [A.E.R.01904].  The Bankruptcy Court cited *Ellicott School Bldg. Authority*, 150 B.R. at 263, and *Greene County Hospital*, 59 B.R. at 389, in support of its instrumentality test.  *Id.*  However, neither of these cases expressly state or even imply that the *type* of control which a state retains over an entity is in any way applicable or relevant to a determination regarding the entity's status as "instrumentality" of the state under the Bankruptcy Code.[15]

Similarly, the other cases cited in the Order provide no support for the Bankruptcy Court's instrumentality test.  For example, the Bankruptcy Court wrote that the court in *In re North and South Shenango Joint Municipal Authority*, 14 B.R. 414 (Bankr. W.D. Pa. 1981), "not only looked to the level of State control over the entity's organization and operations, but also to the intent of the State that created it."  Order at 18 [A.E.R.01897].  The debtor in *Shenango* was incorporated under the Pennsylvania Municipal Authorities Act for the purpose of constructing and operating a public sewer system.  14 B.R. 414.  The Act endowed the debtor (like all other utilities organized thereunder) with certain traditional governmental powers, including the power of eminent domain and the power to levy assessments.  *Id.* at 418.  Contrary to the Bankruptcy Court's statement that the "level of State control over the entity's organization and operations" factored into the *Shenango* court's decision, nowhere in the opinion is the state's control over the debtor mentioned.  Rather, the debtor was a classic municipal authority because, among other things, it was created under a state enabling statute and empowered by that statute to exercise the

---

[15]   The Bankruptcy Court's citation to *Greene County Hospital* is particularly confusing because the Bankruptcy Court, in a different earlier section of its Order, criticized the *Greene County* district court for using "flawed reasoning."  Order at 20 [A.E.R.01899].

traditional governmental powers of assessment and eminent domain. *Id.* As a municipal authority, the debtor was unquestionably a "public agency" for chapter 9 purposes. *Id.* at 418-419. *See also Westport Transit Dist.*, 165 B.R. at 95-96 (transit district formed under enabling statute with the power to exercise eminent domain and other powers of the department of transportation was a municipality for chapter 9 purposes); *In re Pleasant View Util. Dist. of Cheatham County*, 24 B.R. 632, 633-35 (Bankr. M.D. Tenn. 1982) (statutory powers granted to utility district debtor qualified it to file under chapter 9). The *Shenango* court did not apply the control test because it was unnecessary to do so.

At bottom, the Bankruptcy Court's instrumentality test finds no support in the legislative history of chapter 9 or the caselaw, and the Bankruptcy Court supplies no compelling basis for concluding that this test is an integral part of the process.

4.   <u>Because LVMC Is Controlled by the Governor of the State of Nevada, LVMC Is an "Instrumentality of a State" Under the Broad Definition of "Municipality" in the Bankruptcy Code.</u>

In order to obtain tax-exempt financing for the acquisition and construction of the Las Vegas Monorail, it was necessary for LVMC to cede significant control rights to the Governor of the State of Nevada. The Governor's control rights are established under LVMC's Bylaws, evidenced by the substantial long-term involvement of the Governor and the Director in LVMC's affairs, and expressly acknowledged and agreed to exist by LVMC and the Director under the Tax Agreement. For these and other reasons set forth herein, LVMC is an "instrumentality of the State" within the broad definition of "municipality" intended by Congress under section 101(40) of the Bankruptcy Code.

LVMC's acquisition and construction of the Monorail was financed on a tax-exempt basis through the Director's issuance of "governmental bonds" rather than "qualified private activity bonds." Order at 2 [A.E.R.01881]; <u>Tax Agreement</u> at A.E.R.02626. It is also undisputed that LVMC's status as an instrumentality of the State of Nevada was critical to the Director's ability

to issue the Bonds as governmental revenue bonds and to loan the proceeds thereof to LVMC. Order at 24 [A.E.R.01904]. Thus, pursuant to Section 1.8 of the Tax Agreement, LVMC and the Director each acknowledged and agreed that LVMC is "an instrumentality of the State of Nevada" and "controlled by the Governor of the State of Nevada." Tax Agreement at A.E.R.02629.

The Governor's undisputed rights of control over LVMC arise primarily under LVMC's Bylaws. The Governor's control rights are described in detail in Section III.B. of this brief. Pursuant to these rights, the Governor has the discretion to control LVMC's Board of Directors, material financial affairs and aspects of its operations. The significant reach of the Governor's control over LVMC is perhaps best evidenced by the Governor's unfettered right to deny director appointments or reappointments proposed by the Board, and to refrain from making any appointments or reappointments of its own to the Board. Bylaws at A.E.R.02786-87. Accordingly, the Governor has the power to strip LVMC's Board of its members, thereby leaving LVMC with no governing board in violation of the Nevada Nonprofit Corporations Act, and likely resulting in LVMC's administrative dissolution. See Nevada Revised Statutes §§ 82.196 ("Every corporation must be managed by a board of directors or trustees ...") and 82.471-82.496 (setting forth procedures for involuntary dissolution of nonprofit corporation). Moreover, in such a circumstance, all of LVMC's net assets would be distributed to the Governor or a designated agency of the State of Nevada. Articles of Incorporation at A.E.R.02773. In light of the foregoing undisputed discretionary powers of the Governor, no one can reasonably deny that LVMC is in fact controlled by the State of Nevada. The Bankruptcy Court itself found that the Governor's control over LVMC is "fairly expansive" and "significant."[16] Order at 4 n.3, 21 [A.E.R.01883, 01900].

---

[16] Wholly inconsistent with these findings, the Bankruptcy Court also described the State's control over LVMC as "somewhat attenuated." Order at 36 [A.E.R.01915].

In sum, the Governor's approval and control rights apply to virtually all decisions that may be made outside of LVMC's ordinary course of business.  These rights evidence a unique relationship between LVMC and the State of Nevada, and in this sense they bear little or no resemblance to general regulatory powers which state agencies exercise over entire industries or business practices.  Moreover, the degree of government control over LVMC is at least on par with, if not greater in all cases than, the amount of government control demonstrated in the *York County Natural Gas Authority*, *Greene County Hospital* and *Ellicott School Building Authority* cases.  *See York County Natural Gas Auth.*, 238 F. Supp. at 976 n.11; *Greene County Hosp.*, 59 B.R. at 390; *Ellicott School Building Auth.*, 150 B.R. at 264.  Thus, the Governor's undisputed control over LVMC demonstrates that LVMC is an "instrumentality" of the State of Nevada as contemplated under the broad definition of "municipality" set forth in section 101(40) of the Bankruptcy Code.  As a result, LVMC is ineligible for chapter 11 protection under section 109(d) of the Bankruptcy Code, and LVMC's Chapter 11 Case must be dismissed.

> 5. *In re Connector 2000 Association, Inc.*, Case No. 10-04467 (Bankr. D.S.C. June 24, 2010).

On June 24, 2010, Connector 2000 Association, Inc. ("**Connector 2000**"), filed a chapter 9 petition in the Bankruptcy Court for the District of South Carolina.  *In re Connector 2000 Assoc., Inc.*, Case No. 10-04467.  The chapter 9 filing by Connector 2000 serves as a strong rebuttal to the Bankruptcy Court's Order, and it provides significant support for the conclusion that LVMC is not eligible to be a chapter 11 debtor because it is an "instrumentality of a State" under the Bankruptcy Code.[17]  Indeed, the similarities between LVMC and Connector 2000 are striking:

| LVMC | Connector 2000 |
| --- | --- |
| • Nonprofit public benefit corporation under Nevada law | • Nonprofit public benefit corporation under South Carolina law |

---

[17] As of the date of this brief, no objection has been filed to Connector 2000's eligibility under chapter 9.

| | |
|---|---|
| • Tax-exempt instrumentality of the State of Nevada under Federal tax law | • Tax-exempt instrumentality of the State of South Carolina under Federal tax law |
| • Formed to finance, acquire, construct and operate a transportation project (Monorail) | • Formed to finance, acquire construct and operate a transportation project (a toll road) |
| • Financed with tax-exempt governmental revenue bonds | • Financed with tax-exempt governmental revenue bonds |
| • The State of Nevada is not liable for payment of the revenue bonds | • The State of South Carolina is not liable for payment of the revenue bonds |
| • The Governor approves appointments to the board and may remove board members for cause | • The State Department of Transportation approves appointments to the board and may remove board members for cause |
| • The Governor approves the rates charged to users | • The State DOT approves the rates charged to users |
| • All net assets will revert to the State upon the payment or defeasance of the bonds | • All net assets will revert to the State upon the payment or defeasance of the bonds |

*See* Memorandum in Support of Statement of Qualifications Under 11 U.S.C. § 109(c) at 1-4 ("**Memorandum in Support**"); Declaration of Peter Femia at ¶¶ 1-11 ("**Femia Declaration**").[18]

The Memorandum in Support filed by Connector 2000 makes the similarities between LVMC and Connector 2000 even clearer.   In addition to the factual similarities between Connector 2000 and LVMC, Connector 2000 asserts that it is a "public agency or instrumentality of the State" for the same legal reasons that Ambac argued before the Bankruptcy Court, and now argues to this Court, must be applied to LVMC.   Thus, Connector 2000 argues that (a) public policy requires the definition of municipality and other eligibility requirements to be "construed broadly," (b) the "control" test applies to determinations of public agency or instrumentality status in accordance with *York County Natural Gas Authority*, *Greene County Hospital* and *Westport Transportation District*, and (c) Connector 2000 is a public agency or instrumentality because it is "subject to the control by the State."   Memorandum in Support at 19.   Connector

---

[18]   Copies of the Memorandum in Support and the Femia Declaration are attached hereto as <u>Exhibit A</u>.   Ambac requests that this Court take judicial notice of these filings as their existence and contents are not subject to reasonable dispute in that they are publicly-available on the docket of the Bankruptcy Court for the District of South Carolina, Case No. 10-04467.

2000 also argues that it "is very much like a 'highway authority' with the exception that it was formed as a privately incorporated entity rather than a statutory corporation." *Id.* at 20.

Notably, Connector 2000 *does not discuss, attempt to distinguish or identify* any of the instrumentality tests or factors which the Bankruptcy Court held out as key to its determination that LVMC is not a municipality under the Bankruptcy Code.

C.     **Alternatively, LVMC Is a "Municipality" Under the Bankruptcy Court's Instrumentality Test, LVMC Is Ineligible to Be a Chapter 11 Debtor, and LVMC's Chapter 11 Case Must Be Dismissed.**

As previously discussed, the Bankruptcy Court formulated a new test for determining whether an entity is a "instrumentality of a State" within the definition of "municipality" under section 101(40) of the Bankruptcy Code.  Ambac demonstrates herein that the Bankruptcy Court's instrumentality test has no support in applicable caselaw and fails to give effect to Congress' intention to broaden the definition of "municipality" as much as possible.  Without conceding the foregoing positions and arguments, if this Court determines that the Bankruptcy Court's instrumentality test is appropriate to resolve the eligibility issues in this appeal, then Ambac submits that the Bankruptcy Court erred in its application of the test.

The Bankruptcy Court's instrumentality test is summarized on page 25 of the Order:

> If [1] there is State control coupled with public function, then the nature and extent of that control determine whether the entity is an instrumentality.  In this regard, the type of control is critical.  If [2] the control retained or exercised is necessary or designed to allow the State to manage its finances or its fisc – the traditional concerns of Chapter 9 – then the entity is an instrumentality.  If [3] the control, however, is more akin to oversight or regulation, then the entity is not an instrumentality.

[A.E.R.01904].   In applying this new test to LVMC, the Bankruptcy Court described the Governor's control over LVMC as "primarily strategic and periodic, rather than operational and constant," as well as "somewhat attenuated."[19]   *Id.* at 36 [A.E.R.02786-87].   The Bankruptcy

---

[19]   These statements are wholly inconsistent with earlier statements in the Order which describe the Governor's control over LVMC as "fairly expansive" and "significant."  *See* Order at 4 n.3, 21 [A.E.R.01883, 01900].

1  Court then concluded as follows:

2          This low level of State control over matters going to essential state
3          sovereignty and essential state functions indicates that LVMC is not a
           municipality as contemplated by the Bankruptcy Code.
4          . . .

5          It is beyond doubt that Nevada's involvement in LVMC is significant, and
6          some might say too intrusive for LVMC to be purely private.  But those
           intrusions are relatively unique, and not designed to protect public
           finances or the public fisc.
7          …

8          In this light, the controls in place are best viewed more like traditional
9          regulation and less like sovereign specification of function.
           . . .

10         The Governor's control, then, while extensive, is not the type of control
11         that historically has caused courts to label entities or enterprises
           instrumentalities of the State.

12  *Id.* at 37-39 [A.E.R.01916-01918].

13         The undisputed facts in the record reveal that the Bankruptcy Court erred in the

14  application of its own instrumentality test.  First, as previously described in Sections III.B. and

15  IV.B.4. hereof, the Governor of the State of Nevada has extensive powers of control over

16  LVMC's Board of Directors, material financial affairs and aspects of its operations.   The

17  Governor's extensive rights of control over LVMC exceeds the amount of governmental control

18  found to exist in the *York County Natural Gas Authority*, *Greene County Hospital* and *Ellicott*

19  *School Building Authority* cases, and declared to exist in support of the recent Chapter 9 filing by

20  Connector 2000 Association, Inc.  *See York County Natural Gas Auth.*, 238 F. Supp. at 976 n.11;

21  *Greene County Hosp.*, 59 B.R. at 390; *Ellicott School Building Auth.*, 150 B.R. at 264;

22  Memorandum in Support, *In re Connector 2000 Assoc., Inc.*, Case No. 10-10-04467 (Bankr. S.C.

23  June 24, 2010).  No one can reasonably deny that LVMC is subject to pervasive control by the

24  State of Nevada.

25

26

Second, the Governor's extensive control rights are indeed necessary to protect the public finances of the State of Nevada. In this respect, it is important to note that the Director agreed to issue the Bonds on the express conditions that (i) the State of Nevada was protected from liability for payment of the debt on the Bonds, and (ii) the Bonds were not allocable against the State's private activity volume cap. Director's Certificate at A.E.R.02658. In order to satisfy the Director's conditions, as well as gain the benefits of Federal tax exemption, the Bonds had to be issued as governmental revenue bonds. As "revenue bonds," the Bonds are payable solely revenues generated by the Monorail; the Bonds are nonrecourse as to the State. Order at 3 [A.E.R.01882]. As "governmental bonds," the Bonds are not subject to the "volume cap" which limits the aggregate principal amount of private activity bonds which the State of Nevada is permitted to issue in a given calendar year.[20] Director's Certificate at A.E.R.02658.

LVMC's status as an "instrumentality" of the State of Nevada under Federal tax law was critical to the Director's issuance of the Bonds as governmental revenue bonds. Order at 29 [A.E.R.01908]. To qualify as an instrumentality under Federal tax law, LVMC was required (and continues to be required) to cede organizational control to the State. Id. at 29-32 [A.E.R.01908-11]. This is accomplished under LVMC's Bylaws, which provide the Governor with significant rights of control over LVMC's governing board, material financial affairs, and operational elements. Consequently, the Governor's control rights over LVMC were critical to issuance of the Bonds in the form of governmental revenue bonds, and issuance of the Bonds in the form of governmental revenue bonds was critical to protect the State from liability for payment of the Bonds and to ensure that room under the State's private activity volume cap was available to finance other qualified public projects. In other words, the control rights vested in

---

[20] The Internal Revenue Code imposes a "volume cap" on the aggregate principal amount of qualified private activity bonds which may be issued by a state during the calendar year. See 26 U.S.C. § 146. If the Bonds had been issued as qualified private activity bonds, and therefore been allocable to the State's private activity volume cap, then the State would have had little or no room remaining under the cap to issue private activity bonds needed for the tax-exempt financing of hospitals, universities, airports and other qualified projects.

1   the Governor were designed to protect the public finances of the State of Nevada, and those

2   control rights continue to be necessary to protect the public finances of the State.

3          Third, the Governor's oversight and control of LVMC bears little or no resemblance to

4   traditional governmental oversight or regulation.  The Bankruptcy Court Order does not define or

5   describe the attributes of governmental "oversight or regulations," but such regulatory activities

6   are typically implemented in the form of administrative rules.  The plain meaning of

7   "administrative rules" is "public agency statements of general applicability and continuing effect

8   that interpret law or policy or describe the agency's requirements."  BLACK'S LAW DICTIONARY

9   46 (6th ed. 1990).  The control rights granted to the Governor under LVMC's Amendment and

10  Restated Bylaws, and acknowledged and agreed under the Tax Agreement, evidence a unique

11  relationship between the State of Nevada and LVMC, a relationship which exists in order to

12  protect the public fisc and ensure that interest earned on the Bonds is exempt from Federal

13  taxation.   These control rights are not generally applicable to a given regulated industry or

14  business practice, they do not reflect the Governor's interpretation of law or policy, and they do

15  not describe the Governor's requirements to conduct business in Nevada.[21]

16          The foregoing discussion reveals that LVMC is an instrumentality of the State of Nevada

17  for bankruptcy purposes under the instrumentality test created by the Bankruptcy Court.  As a

18  result, LVMC is a "municipality" under section 101(40) of the Bankruptcy Code, it is ineligible

19  for Chapter 11 relief under section 109(d) of the Bankruptcy Code, and the Bankruptcy Court

20  lacks jurisdiction to oversee LVMC's Chapter 11 Case.

---

[21]  The Bankruptcy Court erroneously failed to consider the importance of LVMC's admission in the Tax Agreement
that LVMC was an "instrumentality of the State of Nevada" under the Internal Revenue Code.  Specifically, the
Bankruptcy Court erred as a matter of law when it concluded that this admission did not estop or otherwise preclude
LVMC from asserting that it was not an "instrumentality of the State of Nevada" for purposes of determining
eligibility under chapter 11.  Ambac has previously briefed these issues and incorporates that discussion by reference.
Reply to Oppositions to Motion to Dismiss at 12-17 [A.E.R.01208-13].

**V.     CONCLUSION**

For all the reasons set forth herein, Ambac respectfully requests that this Court reverse the Bankruptcy Court's Order and remand the case to the Bankruptcy Court with instructions to dismiss LVMC's Chapter 11 Case with prejudice.

Dated:  July 6, 2010                                                    Respectfully submitted,

                                                    MCDERMOTT WILL & EMERY LLP
                                                       William P. Smith (IL Bar No. 6187205)
                                                       Steven S. Scholes (IL Bar No. 6191220)
                                                       James W. Kapp III (IL Bar No. 6239269)
                                                       Amy G. Doehring (IL Bar No. 6272148)

                                                    FENNEMORE CRAIG, P.C.

                                                    By:     /s/ Laurel E. Davis
                                                       Laurel E. Davis
                                                       Craig S. Dunlap
                                                       Jeffrey S. Steffen

                                                    *Attorneys for Ambac Assurance Corporation*
                                                    *and The Segregated Account of Ambac*
                                                    *Assurance Corporation, by its Court Appointed*
                                                    *Rehabilitator, the Office of the Commissioner*
                                                    *of Insurance for the State of Wisconsin*